**UNITED STATES of America**

v.

**Robert DELANO, Defendant.**

**No. 91–CR–47A.**

United States District Court,
W.D. New York.

Jan. 22, 1993.

Harold J. Boreanaz, Laurie Boreanaz Carra, Boreanaz, Carra & Boreanaz, Buffalo, NY.

Russell P. Buscaglia, Charles B. Wydysh, Asst. U.S. Attys. (Dennis C. Vacco, U.S. Atty., of counsel), Buffalo, NY, for U.S.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Defendant Robert Delano was charged in a ten-count indictment with: RICO; Conspiracy to Commit RICO; Theft of Government Funds; two counts of Extortion under the Hobbs Act; Mail Fraud; Conspiracy to Commit Mail Fraud; and three counts of violating the Clean Water Act. The trial commenced on July 27, 1992, and on October 22, 1992, the jury returned guilty verdicts on Counts I through V—Count I, RICO; Count II, RICO Conspiracy; Count III, Theft of Government Funds; and Counts IV and V, the two Hobbs Act counts. Defendant was found not guilty on Counts VI through X.

With respect to Counts I and II, the jury found that defendant committed racketeering acts A(iv); B(i), B(ii), B(iv); C; L; and O.

Racketeering act A(iv) charged Hobbs Act extortion, under color of official right, regarding work done by Clyde Mays Tree Experts on land owned by Thomas Greco and Dominic Chirico.

Racketeering acts B(i), B(ii) and B(iv) involved work done on land owned by Ralph Degenhart. B(i) charged New York State larceny by extortion in obtaining the labor of City of Buffalo Parks Department ("Parks Department") employees; B(ii) charged New York State larceny by extortion in obtaining

the value of services of Clyde Mays Tree Experts; and B(iv) charged Hobbs Act Extortion, under color of official right, in obtaining the value of services of Clyde Mays Tree Experts.

Racketeering act C charged New York State larceny by extortion in obtaining the labor of Parks Department employees with regard to work done on land owned by Josephine LoMeo.

Racketeering act L charged New York State larceny by extortion in obtaining the labor of Parks Department employees with regard to work done on land owned by the Buffalo Tennis and Racquetball Center.

Racketeering act O charged New York State larceny by extortion in obtaining the labor of Parks Department employees with regard to work done on land owned by St. Timothy's Church.

On December 3, 1992, defendant made a motion, pursuant to Fed.R.Crim.P. 29, for judgment of acquittal or, in the alternative, for a new trial pursuant to Rule 33.

### DISCUSSION

#### Rule 29: Judgment of Acquittal

Defendant has moved pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure for judgment of acquittal. Rule 29 states that the court should enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."

The standard to be applied in considering such a motion was stated in *United States v. Taylor:*

> The true rule, therefore, is that a trial judge, in passing upon a motion for [judgment] of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he [or she] concludes that upon the evidence there must be such a doubt in a reasonable mind, he [or she] must grant the motion; or, to state it another way, if there is no evidence upon which a reason-

able mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he [or she] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he [or she] must [let the verdict stand].

464 F.2d 240, 243 (2d Cir.1972) (quoting *Curley v. United States,* 160 F.2d. 229, 232–33 (D.C.Cir.), *cert. denied,* 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947)); *see also United States v. Mariani,* 725 F.2d 862 (2d Cir. 1984); *United States v. Artuso,* 618 F.2d 192 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980).

In evaluating the evidence produced in the government's case in chief, the Second Circuit has also stated that while:

[a] reasonable mind must be able to conclude guilt on each and every element of the charged offense, "all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense."

*Mariani,* 725 F.2d at 865 (quoting *United States v. Rodriquez,* 702 F.2d 38, 41 (2d Cir.1983)).

Furthermore, "[t]he evidence is to be viewed 'not in isolation but in conjunction.'" *Id.* (quoting *United States v. Geaney,* 417 F.2d 1116, 1121 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970)). These rules are designed to prevent the usurpation of the jury's function. It is well established that "[t]he court should not substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.* (citing *Rodriquez,* 702 F.2d at 41 (citations omitted)).

Defendant asserts that the evidence presented at trial was insufficient to sustain the jury verdicts on Counts I through V.

## I. Counts I, II, IV and V

In order to be found guilty of violating the RICO statute, the government must prove beyond a reasonable doubt: (1) that an enterprise existed; (2) that the enterprise affected interstate commerce; (3) that the defendant was associated with or employed by the enterprise; (4) that the defendant engaged in a pattern of racketeering activity; and (5) that the defendant conducted or participated in the conduct of the enterprise through that pattern of racketeering activity. 18 U.S.C. § 1962(c).

Defendant asserts that judgment of acquittal should be entered on Counts I and II because the jury could not reasonably have found that the first and fourth elements, that is, existence of an enterprise and pattern of racketeering activity, had been proven. As to Count II, defendant also asserts that the jury could not reasonably have found that the element of conspiracy had been proven.

Resolving all reasonable inferences in favor of the prosecution, and viewing the evidence in the light most favorable to the government with respect to each element of the offense, the Court finds that the jury could reasonably have found defendant guilty of RICO and RICO Conspiracy beyond a reasonable doubt.

### A. Existence of an Enterprise

Although defendant asserts that the government did not establish that the City of Buffalo Parks Department constituted a RICO enterprise, he offers no legal authority that would suggest that it was not.

In order to establish the existence of an enterprise, the government need only prove that the Parks Department is a legal entity such as a corporation or association, which existed and continued to exist in essentially the same form during substantially the entire period charged in the indictment.

The government satisfied its burden of proof on this element. Under the statute, 18 U.S.C. § 1961(4), the term "enterprise" is defined expansively to "include" any individual, partnership, corporation, association, or other legal entity. Noting that Congress has mandated a liberal construction of the RICO statute in order to effectuate its remedial purposes, and pointing to the expansive statutory definition of the term, courts have held that the list of enumerated entities in § 1961(4) is not exhaustive but merely illus-

trative. *United States v. Aimone,* 715 F.2d 822, 828 (3d Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3585, 3586, 82 L.Ed.2d 883 (1984); *United States v. Angelilli,* 660 F.2d 23, 31 (2d Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). Public and governmental entities as well as private entities can constitute RICO enterprises. *United States v. Lee Stoller Enters., Inc.,* 652 F.2d 1313, 1318 (7th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981).

■ The government established that the Parks Department was a legal entity. Laurence Rubin and Thomas Keenan testified at trial that the Parks Department was part of the City of Buffalo, and thus, clearly a legal entity for purposes of § 1961(4). *See United States v. Griffin,* 660 F.2d 996, 999 (4th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982) ("[I]f contested at all, [the existence of the RICO enterprise] would involve proof simply of the 'legal' existence of the corporation, partnership or other legal form of organization charged.").

## B. *Pattern of Racketeering Activity*

■ The fourth element of a RICO charge is that the defendant engaged in a pattern of racketeering activity. A defendant engages in a pattern of racketeering activity if he or she commits at least two racketeering acts within ten years of each other, which are sufficiently related to constitute a pattern. The jury found that defendant committed racketeering acts A(iv), B(i), B(ii), B(iv), C, L and O.

With respect to this element of Counts I and II, defendant essentially asserts two arguments: (1) that the government did not present sufficient evidence to establish that defendant committed any of the racketeering acts that the jury found he had committed; and (2) in the event there was sufficient evidence for the jury to find that the racketeering acts were committed, the government did not satisfy its burden of proving that these racketeering acts constituted a pattern of racketeering activity for purposes of this element.

## 1. Sufficiency of Proof on Racketeering Acts:

The racketeering acts charged in Counts I and II of the indictment involved either extortion under federal law—the Hobbs Act, or larceny by extortion under New York law.

### a. Hobbs Act Convictions:

■ As to the Hobbs Act charges—racketeering acts (A)(iv) and B(iv)—defendant argues that the jury could not reasonably have found that he intended to induce fear, or that he obstructed interstate commerce by extortion. These arguments also serve as the basis for defendant's motion for judgment of acquittal on Counts IV and V, which involve the same charges as racketeering acts A and B.

Resolving all reasonable inferences in favor of the prosecution, and viewing the evidence in the light most favorable to the government with respect to each element of the offense, the Court finds that the jury could reasonably have found defendant guilty of extortion under the Hobbs Act beyond a reasonable doubt.

A defendant commits extortion under the Hobbs Act either through the wrongful use of actual or threatened force, violence, or fear, including fear of economic harm; or under color of official right. Acts of racketeering A(iii) and B(iii) charged defendant with violating the Hobbs Act through the wrongful use of actual or threatened force, violence, or fear. Acts of racketeering A(iv) and B(iv) charged Hobbs Act extortion under color of official right, that is, that defendant used his position as a public official, or the authority of his public office to obtain property or services not due him or his public office.

The verdict sheet for Counts I and II indicated that the jury found that defendant committed racketeering acts A(iv) and B(iv), but not A(iii) or B(iii). Thus, the jury found that defendant had committed Hobbs Act extortion under color of official right, but not by the wrongful use of actual or threatened force, violence or fear. The jury also found defendant guilty on Counts IV and V, both of which charged defendant with violating the

Hobbs Act under the alternate theories of wrongful use of fear, and under color of official right. As to these counts, the jury was not required to specify whether if guilty, defendant committed the extortion by wrongful use of fear or under color of official right.

Defendant now attacks the Hobbs Act convictions on the ground that the jury could not reasonably have found that he intended to induce fear. However, extortion under color of official right does not have as an element that defendant intended to induce fear. Therefore, defendant's argument as to racketeering acts A(iv) and B(iv) fails.

As to the convictions on Counts IV and V, the jury did not have to find that defendant intended to induce fear in order to find him guilty on these counts. The jury could convict by finding *either* that defendant committed extortion under color of official right; *or* that he committed extortion through the *wrongful use or threat of force, violence. or fear.* Because defendant has not established that there was insufficient evidence for the jury to find that defendant committed extortion under color of official right, the convictions on Counts IV and V must stand.

Moreover, the Court previously found that the government established sufficient evidence for the jury to find that defendant intended to induce fear and that he obstructed interstate commerce by extortion. Defendant has raised no argument that would require a different result.

### b. New York State Larceny by Extortion:

As to the remaining predicate acts that the jury found defendant committed— racketeering acts B(i), B(ii), C, L and O— defendant argues that the jury could not reasonably have found that he committed larceny by extortion under New York law because the proof at trial established no more than coercion. Because coercion is not a predicate act under RICO, defendant argues that no pattern of racketeering activity could be established, and that therefore judgment of acquittal on Counts I and II is required.

This argument ignores one critical fact. The jury found that defendant committed two predicate acts that did not involve larceny by extortion under New York law—A(iv) and B(iv). Because the Court has ruled that there was sufficient evidence to sustain the jury verdict on these racketeering acts, and because only two racketeering acts need be proven under RICO, defendant's argument that no predicate acts were proven is without merit. While defendant may want to group federal and state extortion charges for purposes of defining extortion, the fact is that the charges are legally distinct. The New York State definition of extortion has no relevance to extortion under federal law for purposes of determining whether the government has sustained its burden as to Counts I and II.

In addition, the Court has previously ruled that the government produced sufficient evidence to support a jury finding that defendant committed larceny by extortion rather than coercion, and defendant has presented no new argument or case law to warrant a different conclusion.

As to defendant's assertion that the government was required to establish that defendant extorted from the City of Buffalo rather than Parks Department employees because it was the City who owned the property that was stolen, the Court notes that the term "property" is defined expansively, and that the labor, the physical work of Parks Department employees obtained by defendant by extortion, could reasonably have been found by the jury to be property of Parks Department workers as opposed to the City who may have compensated them. The New York Court of Appeals has stated that the term "property" for purposes of larceny by extortion "is intended to embrace every species of valuable right and interest[,] and whatever tends in any degree, no matter how small, to deprive one of that right, or interest, deprives him [or her] of his [or her] property." *People v. Spatarella,* 34 N.Y.2d 157, 356 N.Y.S.2d 566, 569, 313 N.E.2d 38, 41 (Ct.App.1974). New York courts have consistently held that the term "property" includes intangible rights. *Id.; see also People v. Wisch,* 58 Misc.2d 766, 296 N.Y.S.2d 882, 886 (Sup.Ct.N.Y.Cty.1969). Thus, the Court finds that the jury could reasonably have

found that the physical labor and time of Parks Department employees was the employees' property, and was capable of being extorted by defendant.

## 2. Proof of Pattern of Racketeering Activity:

■ Defendant argues that even if the jury could reasonably have found that defendant committed the racketeering acts in question, there was insufficient evidence to support a finding that these individual acts constituted a pattern of racketeering activity.

■ In order to establish that the charged racketeering acts constituted a pattern of racketeering activity, the government must demonstrate that the acts are related and that they constitute a threat of continuing racketeering activity. *H.J., Inc. v. North-western Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).

The Court finds that viewing the evidence in the light most favorable to the government, the jury could reasonably have found that the racketeering acts they found to have been committed by defendant constituted a patte· · ;i racketeering activity for purposes of Counts I and II.

Relatedness, or an interrelationship between the predicate acts, may be established by proof of "temporal proximity, or common goals, or similarity of methods, or repetitions. [Furthermore,] [t]he degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions." *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); *see also United States v. Bloome,* 784 F.Supp. 23, 26 (E.D.N.Y.1992). Here, the racketeering acts the jury found defendant committed shared temporal proximity, a common motive and goal, and similarity of method. The government produced sufficient evidence to establish a relation between these racketeering acts—that defendant committed numerous extortions within a five-year period by providing Parks Department services and equipment for personal gain. In addition, the relatedness requirement is certainly es-

tablished through racketeering acts A(iv) and B(iv), which involved the same victim and almost identical method of extortion within a one-year period.

■ As to the continuity requirement, the government may show that the racketeering acts found to have been committed posed a threat of continued racketeering activity by proving: (1) that the acts are part of a long-term association that exists for criminal purposes; or (2) that they are a regular way of conducting the defendant's ongoing legitimate business; or (3) that they are a regular way of conducting or participating in an ongoing and legitimate enterprise. *H.J., Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902.

The Court finds that the government established sufficient evidence for the jury to find that racketeering acts A(iv), B(i), B(ii), B(iv), C, L and O represented a regular way of conducting an ongoing legitimate business or enterprise. The jury could reasonably have found that extorting labor for personal gain by means of fear or improper use of defendant's position was the regular way the Parks Department conducted business. The testimony and evidence at trial sufficiently established that normal operations for the Parks' Department involved the provision of Department services and equipment for personal gain.

Defendant's argument that no pattern was established because all the activity was initiated by outside people such that there were no factors tying the acts together, is without merit. The racketeering acts found by the jury to have been committed by defendant were related by temporal proximity, and a common plan and motive to provide services to those not entitled to them, in exchange for some form of personal gain. The operation of the Parks Department was a pattern of racketeering activity with a common underlying motive and method which many people outside the Department were aware of and used to their advantage. The fact that outside individuals may have solicited the Department's services does not negate a finding of relation or continuity.

To the extent that defendant argues that the government failed to establish that defendant, as opposed to the enterprise (Parks

Department), engaged in a pattern of racketeering activity, the Court finds that the jury could reasonably have found that defendant was personally engaged in a pattern of racketeering activity.

### C. *Count II: Proof of Conspiracy:*

 In addition to the above arguments, defendant also asserts as to Count II, that the jury could not reasonably have found that the element of conspiracy had been proven.

Defendant argues that there was insufficient proof of an agreement to participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity. Defendant states that Edward Graci, a co-conspirator, gave no testimony about an agreement other than one related to the theft of chlorine from the Parks Department. Defendant infers that because the jury did not convict defendant on any count or predicate act about which Mr. Graci testified, they disregarded the entirety of his testimony and further, implicitly found that defendant and Mr. Graci had made no agreements or plans between them regarding the activities charged.

Such inferences advanced by defendant are mere speculation and involve unwarranted leaps of reasoning. There was testimony elicited by the government other than that of Mr. Graci which established the predicate acts charged in Counts I and II. As to those acts the jury found defendant did *not* commit, an inference that they accepted Mr. Graci's testimony but not that of the other witnesses who testified regarding those acts, is as reasonable as the inference advanced by defendant.

More importantly, however, defendant misperceives the government's burden of establishing a factually sufficient agreement for purposes of Count II. In order to meet its burden, the government must prove beyond a reasonable doubt that defendant agreed to participate, directly or indirectly, in the affairs of the Parks Department through a pattern of racketeering activity.

 The government need not prove that defendant agreed with every other conspirator, knew all of the other conspirators, or had full knowledge of all the details of the conspiracy. All that must be shown is: (1) that defendant agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts; (2) that he knew the general nature of the conspiracy; and (3) that he knew the conspiracy extended beyond his individual role. *See United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir.) (and cases cited therein), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). The jury was instructed that the agreement element would be satisfied if they found that defendant actually committed two or more of the alleged racketeering acts, or if they found that he agreed personally to commit two or more of the acts.

The Court has previously found that there was sufficient proof to support a jury finding that defendant committed racketeering acts A(iv), B(i), B(ii), B(iv), C, L, and O—that is, that he actually committed more than two racketeering acts. In addition, the jury could reasonably have found that defendant knew the general nature of the conspiracy, and knew that the conspiracy extended beyond his individual role. Therefore, sufficient proof was established that there was an agreement by defendant to commit the substantive racketeering offense for purposes of Count II.

Accordingly, defendant's motion for judgment of acquittal is denied as to Counts I, II, IV and V.

### II. Count III

 Count III of the indictment charged defendant with theft of government funds in violation of 18 U.S.C. § 666. The basis for defendant's Rule 29 motion as to Count III is that there was insufficient evidence for the jury to find that the Parks Department, as opposed to the City of Buffalo, received more than $10,000 in federal assistance in any one-year period. The government, however, never charged in the indictment or claimed at oral argument that the Parks Department *did* receive federal assistance in excess of $10,000. The indictment alleges that it was the *City of Buffalo* that received federal assistance in excess of $10,000, and the government conceded that the testimony and evi-

dence at trial was that the *City* received the federal assistance.

It is clear, therefore, that defendant's argument in support of his Rule 29 motion is essentially one of statutory construction—that because the indictment alleged that the property stolen was under the care, custody or control of the Parks Department; that the Parks Department was an agency of the City of Buffalo; and that defendant was an agent of the Parks Department, the government was required, under § 666, to prove that the Parks Department, and not the City, received the federal assistance. As such, defendant's motion is simply an attempt to reargue his motion to dismiss Count III, and the Court's prior ruling that the City of Buffalo and City of Buffalo Parks Department constitute the same legal entity for purposes of § 666. Having previously resolved this statutory construction issue in a decision rendered from the bench on October 9, 1992; and defendant having presented no new authority or reasoning that would warrant a different conclusion, the Court denies defendant's Rule 29 motion as to Count III.

Nevertheless, the Court finds it necessary to address defendant's assertion that the Court's decision on Count III, and its subsequent jury instructions thereon, invaded the jury's fact-finding function.

As the Court noted in its October 9, 1992 oral decision, § 666 is a relatively new statute. The language of the statute does not lend itself to clear interpretation, as evidenced by the amount of time the parties were afforded by the Court to formulate and argue their respective interpretations. Few cases have interpreted § 666, and none have addressed the issues raised by defendant. These issues, which the Court first addressed and decided in the context of a motion to dismiss made on the eve of summation, and after the parties had reviewed the charges several times at several different charging conferences, involve questions of statutory construction.

Issues of statutory construction and interpretation are legal, not factual. Once the Court resolved such issues, it was obligated to instruct the jury in accordance with its decision. Thus, the Court's decision regarding the statutory construction of § 666 and the jury instructions that subsequently incorporated the Court's decision, were purely within the province of the Court. *See United States v. Peery,* 977 F.2d 1230, 1233–34 n. 2 (8th Cir.1992) ("determining whether section 666 applies to [a] defendant's] conduct is a question of law.").

It is a fundamental principle that courts in both civil and criminal cases are to determine questions of law and instruct the jury accordingly. The authority to instruct the jury that the government has satisfied a particular element of a crime as a matter of law does not intrude upon the jury's fact-finding function.

As to Count III, the jury was instructed as a matter of law that the Parks Department and City of Buffalo were one and the same; that defendant, as commissioner of the Parks Department, was an agent of the City of Buffalo; and that if the jury found that the City of Buffalo Urban Renewal Agency ("BURA") received in excess of $10,000 of federal assistance in any one-year period, the City of Buffalo received that federal assistance.

Although the jurors were instructed that federal funds received by BURA were, for purposes of the statute, received by the City, they were not instructed as a matter of law that BURA received $10,000 of federal funds in any one-year period. That was a question of fact for the jury to decide from the testimony and exhibits in evidence. Defendant's assertion that the Court charged the jury that the government had satisfied its burden on this issue as a matter of law is therefore without merit.

In addition, the Court notes that its instructions to the jury on Counts IV and V involved several findings as a matter of law to which defendant did not object. As to the wrongful use of fear aspect of these counts, the jury was instructed that money and the value of services of Clyde Mays Tree Experts constituted property for purposes of the first element, and for purposes of the third element, that Clyde Mays Tree Experts' business was involved in interstate commerce. *See* Leonard B. Sand, et al.,

Modern Federal Jury Instructions, Volume 2, Instructions 50–13, 50–14 [1] (1992). As to the under color of official right aspect of Counts IV and V, the jury was instructed that there was no issue that defendant was a "public official, or held public office" for purposes of the first element, or that Clyde Mays Tree Experts' business was involved in interstate commerce for purposes of the fourth element. *See id.*, Instructions 50–21, 50–22.[2]

These findings and instructions by the Court that the government had satisfied, as a matter of law, its burden of proof on several elements or portions of elements of the Hobbs Act charges are no different than the Court's finding that for purposes of the first element of Count III, the Parks Department and City of Buffalo were one and the same, or that, for purposes of the second element, if the jury found that federal assistance was received by BURA, then as a matter of law, that assistance was received by the City. As such, the Court rejects defendant's argument that these findings involved questions of fact for the jury.

Contrary to defendant's assertion, the Court did not draft the jury instructions on Count III to save the inartfully and inaccurately drafted indictment; the Court drafted the instructions consistent with its interpretation of the statute. Whether or not the legal interpretation made by the Court on the eve of summations is correct, is better left to the Court of Appeals, rather than the trial court on a post-verdict Rule 29 motion.

Defendant's motion for judgment of acquittal on Count III is therefore denied.

### Rule 33: Motion for a New Trial

In the alternative, defendant seeks to have the jury verdict set aside and a new trial ordered pursuant to Fed.R.Crim.P. 33.

■ In general, the Court may grant a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. "Motions for a new trial are directed to the trial court's discretion and [are] sparingly used." *United States v. Rivera–Sola*, 713 F.2d 866, 874 (1st Cir.1983) (citations omitted); *see also United States v. Morales*, 902 F.2d 604, 605 (7th Cir.), *amended on other grounds*, 910 F.2d 467 (1990). The burden of justifying a new trial rests with the defendant. *See, e.g., United States v. Geders*, 625 F.2d 31, 33 (5th Cir.1980); *United States v. Vargas*, 606 F.2d 341, 344 (1st Cir.1979). "The evidence must preponderate heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Martinez*, 763 F.2d 1297 (11th Cir.1985); *see also United States v. Reed*, 875 F.2d 107, 114 (7th

1. In this case, there is no issue as to what constitutes "property" for purposes of the first element; nor is there an issue as to what is considered "interstate commerce" for purposes of the third element.

With respect to the first element—the obtaining of "the property of another, or from the presence of another"—whether the objects constitute property is a question of law for me to decide. It is not a question of fact for you, the jury, to determine. I instruct you that the objects the defendant is charged with taking are property.

With respect to the third element—that "interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in some way as a result of the defendant's actions"—it is a question of fact for you, the jury, to determine, in accordance with my instructions, whether such a delay, obstruction or effect has occurred. However, it is a question of law for me to decide whether an activity or business is considered interstate commerce. I instruct you that the objects or activity referred to in the indictment are interstate commerce.

Instruction 50–14: Personal Property.

2. In this case, there is no issue as to whether the defendant was a "public official, or held public office" for purposes of the first element; nor is there an issue as to what is considered "interstate commerce" for purposes of the fourth element.

With respect to the first element—that the defendant held public office, or was an official—the evidence shows, and there appears to be no dispute, that the defendant occupied such an official position.

With respect to the fourth element—that "interstate commerce or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree"—it is a question of fact for you, the jury, to determine in accordance with my instructions, whether an effect has occurred. However, it is a question of law for me to decide whether an activity or business is considered interstate commerce. I instruct you that the objects or activity referred to in the indictment are interstate commerce. Instruction 50–22: Matters which the Jury Need Not Consider.

Cir.1989) (test is whether it would be a "manifest injustice" to let the guilty verdict stand).

Defendant asserts that a new trial is warranted on two grounds: (1) that his right to confront his accusers was restricted in violation of the Sixth Amendment by this Court's evidentiary ruling that defendant was precluded from testifying regarding statements made to him by witnesses who had already testified as to those conversations; and (2) that the Court's submission of the text of the jury charge to the jury constituted an abuse of discretion and resulted in substantial prejudice to defendant.

## I. Right of Confrontation

 Defendant asserts that it would be a manifest injustice to let the guilty verdict stand because the Court violated his right to confrontation when it ruled that he was precluded from testifying about his recollection of conversations he had with witnesses who had previously testified as to those conversations during the government's case. The Court allowed defendant to testify as to what he said to those individuals and what his understanding of the conversations was, but precluded him from testifying as to what the individuals allegedly said to him.

At oral argument, defendant argued that not allowing him to testify as to statements made to him resulted in fundamental unfairness and requires a new trial. The principal of fundamental fairness in a court of law is necessarily defined and shaped by the rules of evidence. Evidence that may be relevant or probative is not by that reason alone, admissible. Testimony that constitutes hearsay—an out of court statement offered to prove the truth of the matter asserted—is not admissible unless it falls within one of the exceptions enumerated in Fed.R.Evid. 803 and 804.

Defendant's proposed testimony regarding statements made to him by others did not fall within Rule 801(d), statements that are not hearsay, and was therefore hearsay unless not offered for the truth of the matters asserted. During the trial and at oral argument, defendant consistently conceded that the statements were being offered for the truth of the matters asserted, and were, therefore, hearsay, but argued that the testimony should nevertheless be admitted solely for the purpose of protecting the defendant's right to confront the witnesses and counter their version of conversations with him.

Despite defendant's sense of what is fair, however, such statements are admissible only if they fall within one of the hearsay exceptions. At trial, the Court found that they did not fall under a hearsay exception, and defendant has not asserted otherwise. On the other hand, as to the testimony of the witnesses in question—Josephine LoMeo, Ralph Degenhart, Joseph Imiolo and others—the Court specifically found that their testimony regarding conversations with defendant was either not offered for the truth of the matter asserted, or was admissible under various hearsay exceptions.[3] The Court's evidentiary ruling limiting defendant's testimony did not violate defendant's right of confrontation because the right of confrontation does not vitiate the rules of evidence. The right is not implicated where the accused seeks to introduce hearsay declarations as part of his or her defense. *United States v. DiMaria*, 727 F.2d 265, 272 n. 6 (2d Cir.1984).

Further, the Supreme Court has held that "[t]he right of confrontation is basically a trial right [which] includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). "[A] primary interest secured by [the right of confrontation] is the right of cross-examination." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076–77, 13 L.Ed.2d 934 (1965)).

3. Even were the Court to find that the testimony in question should have been admitted, a new trial is not required because the Court's ruling must be taken in the context of the entire, almost three-month long trial, looking to the particular circumstances of the case. Manifest injustice does not result where, as here, the evidence and testimony against defendant was substantial, even overwhelming.

"The primary object of the [Confrontation Clause] ... [is] to prevent depositions or *ex parte* affidavits ... being used against the [defendant] in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him [or her] to stand face to face with the jury in order that they may look at him [or her], and judge by his [or her] demeanor upon the stand and the manner in which he [or she] gives his [or her] testimony whether he [or she] is worthy of belief."

*Barber*, 390 U.S. at 721, 88 S.Ct. at 1320 (quoting *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895)).

The Court finds that because defendant had a full and fair opportunity to cross-examine each of the witnesses in question, his confrontation right was not implicated. Defendant cross-examined the witnesses extensively on the basis of their recollection; any possible motive or bias that would color their recollection or testimony; the context of their conversations with defendant; and any possibility there might have been for misinterpreting the conversations. Each of the witnesses took the stand, giving the jury a full opportunity to observe their demeanor, hear the tone and inflection of their voices, and note the manner in which they answered or failed to answer the questions put to them both on direct and cross examination.

In addition, the Court did, in a sense of fairness, allow defendant to testify as to what he said to these witnesses and what his understanding of the conversations was. Because the Court allowed the jury to hear such testimony, which was arguably hearsay, any prejudice to defendant resulting from the preclusion of defendant's testimony as to what the witnesses said to him, was at best, slight. As a practical matter, defendant was allowed to testify as to the general nature and scope of the various conversations between himself and the witnesses in question.

The right to confront witnesses does not require that either through cross examination or taking the stand, a defendant be allowed to contest, in derogation of the rules of evidence, each and every statement made by a witness. Defendant's motion for a new trial on this basis is therefore denied.

## II. Submitting the Jury Charge to the Jury

At the commencement of jury deliberations, the Court sent the jury the written text of its instructions on the law. Defendant argues that because the jurors had the text of the charge, they did not request further instructions and the parties were therefore unable to ensure that they were following the proper rules of law. Defendant asserts that the decision to give the jury a copy of the charge was an abuse of the Court's discretion that resulted in such prejudice to defendant that, pursuant to Fed. R.Crim.P. 33, it would be a miscarriage of justice to let the verdict stand.[4]

The Court finds that this argument really involves two distinct issues: (1) was the submission of the written text of the charge to the jury an abuse of discretion that resulted in substantial prejudice to defendant so as to warrant a new trial; and (2) is defendant entitled to seek a new trial based on the jury's alleged misunderstanding or misinterpretation of the law.

### A. Abuse of Discretion

 Courts have wide discretion to submit the text of the charge to the jury:

As litigation grows increasingly complex, the jury often may be helped in their deliberations by having a copy of the instructions before them rather than sending word to the court asking that the instructions on a certain point be repeated. The trial judge has wide discretion as to whether he [or she] will submit a copy of his [or her] instructions to the jury.

*United States v. Standard Oil Co.*, 316 F.2d 884, 896 (7th Cir.1963); *see also United States v. Watson*, 669 F.2d 1374, 1386 (11th

---

4. Although defendant conceded at oral argument that he was not sure he had preserved this objection by making it at the time of the Court's decision to submit the charge to the jury, the Court will consider it.

Cir.1982) ("[U]nder appropriate circumstances, the use of . . . a written charge could well aid juror comprehension, as well as expedite the proceedings."). (citations omitted); *United States v. Perez*, 648 F.2d 219, 222 (5th Cir. Unit B), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 872, 66 L.Ed.2d 810 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981).

The Court has found it helpful, as a general practice, to provide juries with a copy of the jury instructions to assist them in applying the law to the facts as they find them. In this case, there were several specific factors that weighed heavily in favor of providing the written text of the charge to the jury: the trial lasted almost three months; the jury charge lasted over three hours; the over 300 pages of charge encompassed instructions on ten counts, including the complex law of RICO and RICO conspiracy; and because some of the racketeering acts under RICO and RICO conspiracy involved the same charges as other counts in the indictment, the jury charge simply referenced instructions previously given, rather than repeating them.

Moreover, the Court finds that the manner and form in which the charge was provided guarded against any danger of prejudice to defendant. Prior to charging the jury, the parties were informed of the Court's intention to give a copy of the charge to the jury for use during their deliberations.[5] Precautions were taken by the Court to remove any underlining or emphasis from the text of the charge so as not to cause the jury to focus on any particular language or charge. A preliminary instruction was included at the beginning of the text which stated that the document they had been given was a copy of the instructions of law which had just been read to them; that they were to apply these instructions to the facts as they determined them; and that they were to read the in-

structions as a whole and not single out any instruction as alone stating the law.[6] *See United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir.1977).

Defendant now argues that the Court should have included a specific cautionary instruction that, in using the copy of the charge, the jurors "were not to engage in any of their own interpretive considerations." Item No. 39, at 13. However, if defendant had wanted an additional preliminary instruction, he should have requested it when he was informed of the Court's intention to provide the text of the charge to the jury and to include a preliminary instruction. Having failed to do so, defendant has waived the right to argue that the preliminary instruction did not include adequate cautionary instructions.

The Court finds that given the length of the trial, the number of counts in the indictment, the complexity of the charges, the length of the jury charge, and the precautions taken by the Court, defendant's motion for a new trial on this basis is denied.

## B. *Jury Misunderstanding and Misinterpretation of the Law*

Defendant asserts that the submission of the text of the charge to the jury resulted in substantial prejudice because the jury never asked for clarifications on the law or for further instructions. Defendant links the lack of questions by the jury to the possibility that they misunderstood or misinterpreted the law.

Without addressing the purely speculative nature of this argument, the Court finds that defendant cannot base his motion for a new trial on either the mere possibility that the jury misunderstood or misinterpreted the law, or on statements by jurors that would tend to support such a conclusion.[7]

---

5. The Court notes that defendant never objected to the form or layout of the written text of the charge.

6. The preliminary instruction read as follows:

 The following is a copy of the instructions of law which the Court has read to you. These instructions are provided to you in order to assist you in your deliberations. You are to apply these instructions to the facts as you determine them to be.

 You are reminded, however, that you are to read the following instructions as a whole. You are not to single out any instruction as alone stating the law.

7. The Court notes that neither party addressed this critical and overriding issue of whether defendant could base his motion for a new trial on

Defendant's motion for a new trial is in effect an "attempt to expose the jury's collective mental process to judicial scrutiny." *United States v. D'Angelo*, 598 F.2d 1002, 1003 (5th Cir.1979). However, defendant is expressly prohibited from delving into the mental processes and value judgments of the jury after the verdict is rendered. The law assumes that the jury will understand and follow the law as instructed. *Id.* at 1005.

A jury has an obligation to follow the law as it is given by the trial court, but it is a peculiar facet of the jury institution that once a verdict is rendered, no judicial inquiry is permitted into the jury's deliberative process to determine if in fact the court's instructions were properly followed. As the Supreme Court noted long ago, in that limited sense a jury passes both on law and fact, for " 'in practice, the verdict of the jury, both upon the law and the fact, is conclusive; because; from the nature of the proceeding, there is no judicial power by which the conclusion of law thus brought upon the record by that verdict can be reversed, set aside, or inquired into.' "
*Id.* at 1004 (quoting *Sparf v. United States*, 156 U.S. 51, 80, 15 S.Ct. 273, 284, 39 L.Ed. 343 (1895) (quoting *Com. v. Anthes*, 5 Gray 185)).

▆▆ It is well established that the possibility that the jury misunderstood or even intentionally misapplied the law does not warrant reversal of the conviction. *Id.* at 1003. Thus, defendant's argument that substantial prejudice resulted from his inability to ensure that the jury understood the law and was interpreting it and applying it to the facts correctly, is without merit.

▆▆ Defendant further argues that the substantial prejudice resulted not simply from the possibility of misinterpretation by the jury, but from actual misinterpretation and misunderstanding as evidenced by statements made by two jurors after the verdict was rendered. The statements in question are two letters from one juror, Item Nos. 42 and 43, and a newspaper interview of a sec-

ond. Item No. 39, Exhibit. The Court not only finds that such juror statements do not demonstrate actual misunderstanding or misinterpretation of the law by the jury, but also, that such statements cannot be used as a basis for a new trial under either the common law or the Federal Rules of Evidence.

"By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 2745, 97 L.Ed.2d 90 (1987) (citations omitted). Defendant's attempt to use the post-verdict statements of two of twelve jurors to probe the jury's process of deliberation and find out how and why it reached its verdict "is the one form of attack on a verdict that has always been forbidden in Anglo–American law." *D'Angelo*, 598 F.2d at 1004. "Inquiry into the . . . compliance of jurors . . . requires inquiry into a matter that essentially inheres in the verdict, and is thus strictly forbidden." *Id.* (citing *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892)).

Federal Rule of Evidence 606(b) is grounded in this common law rule against the admission of jury testimony to impeach a verdict. The purpose and intent of the rule is to "insulat[e] . . . the manner in which the jury reached its verdict, . . . including arguments, statements, discussions, mental and emotional reactions, votes and any other feature of the process." Notes of Advisory Committee on 1972 Proposed Rules, *reprinted in* Federal Criminal Code and Rules, at 245 (1991 Revised Ed.). The rule, like the common law, is designed to promote freedom of deliberation, the stability and finality of verdicts, and the protection of jurors against annoyance and embarrassment. *See McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

▆▆ With the exception for evidence concerning extraneous influence, which both

an assertion that the jury misunderstood or misinterpreted the law, and attempt to use juror statements in support thereof.

parties here have expressly denied, Rule 606(b) bars juror testimony, upon an inquiry into the validity of a verdict,

> as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith....

Fed.R.Evid. 606(b). The rule also prohibits receipt and consideration of a juror's affidavit or evidence of any statement by the juror concerning any matter about which that juror would be precluded from testifying. *Id.*

The letters and newspaper article in question clearly constitute statements about which the involved jurors would be precluded from testifying under Rule 606(b), *see* 27 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure, § 6074, at 417 (1990) (citing *Shamburger v. Behrens,* 418 N.W.2d 299, 303 (S.D.1988) (consideration of letter from juror to prevailing attorney precluded under Rule 606(b))), because they reflect upon matters occurring during the course of the jury's deliberation; they reflect concerns, thoughts and discussions during deliberation that influenced the juror or jurors to assent to the verdict; and they reflect the juror's mental processes. *See* Item No. 39, Exhibit, Newspaper interview of juror "Ralph" [8]; Item No. 42, Letter to defendant from Juror No. 6—Joan Johnson [9]; Item No. 43, Letter to Court from Ms. Johnson.[10] As such, these juror statements cannot be considered by the Court.

In addition, the Advisory Committee on Rule 606(b) specifically noted with approval court decisions that held jurors incompetent to testify as to whether they or other jurors misinterpreted their instructions. Notes of Advisory Committee on 1972 Proposed Rules, at 246 (citing *Farmers Coop. Elev. Ass'n v. Strand,* 382 F.2d 224, 230 (8th Cir.), *cert. denied,* 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967)). Moreover, the rule's legislative history clearly indicates a conscious decision by Congress to disallow juror testimony as to the jurors' mental processes and fidelity to the court's instructions. *See generally Tanner,* 483 U.S. 107, 107 S.Ct. 2739.

While "there is always some danger that jurors will misunderstand the law or consider improper factors in reaching their verdict, ... by implementing Rule 606(b), Congress ... made [a] policy decision that the social costs of such error are outweighed by the need for finality to litigation, ... protect[ion of] jurors from harassment after a verdict is rendered...." *See Peveto v. Sears; Roebuck & Co.,* 807 F.2d 486, 489 (5th Cir.1987). Whether or not the jury misunderstood the Court's instructions is not a question to be reexamined after the verdict has been rendered.

Accordingly, defendant's motion for a new trial pursuant to Fed.R.Crim.P. 33 is denied.

## CONCLUSION

For the reasons set forth above, defendant's motion, pursuant to Fed.R.Crim.P. 29, for judgment of acquittal on Counts I, II, III, IV and V is denied. Defendant's motion for

---

**8.** When you say racketeering, you think he was a big time mobster or something, when, in fact, he wasn't. He was guilty of racketeering, but to us that didn't mean he was personally gaining from it.

> So this fear thing, we couldn't understand where it was coming from. It just didn't seem legitimate. If it was a bunch of school kids, we'd have said, fine. But grown men? They could have gone to the union or they could have gone to the press.

Item No. 39, Exhibit.

**9.** I felt very badly about the outcome of the trial, even though I was partly to blame for the verdict.

I stood my ground as long as I could because I believed then, and I believe now, that you are not a criminal or a racketeer. Every time I would vote the way I felt, the law and instructions were read to me over and over. I think the law should be more flexible, but I guess I can't change that....

Item No. 42.

**10.** Speaking for myself, if I had known that I didn't have to stick to every word, that I could have used the 'Book' for reference if I needed to, I'm sure I would have arrived at a not guilty vote more times than I did....

Item No. 43.

a new trial, pursuant to Fed.R.Crim.P. 33, is also denied.

IT IS SO ORDERED.