UNITED STATES of America, Appellee,

v.

Robert E. DELANO, Defendant–Appellant.

No. 303, Docket 93–1395.

United States Court of Appeals, Second Circuit.

· Argued Nov. 2, 1994.

Decided May 16, 1995.

---

Laurie Boreanaz Carra, Buffalo, NY (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, of counsel), for appellant.

Russell P. Buscaglia, Asst. U.S. Atty., W.D.N.Y., Buffalo, NY (Patrick H. NeMoyer, U.S. Atty. for W.D.N.Y., Senta Barry Siuda, Asst. U.S. Atty., W.D.N.Y., of counsel), for appellee.

Before: MESKILL, WINTER and MAHONEY, Circuit Judges.

MESKILL, Circuit Judge:

Appellant Robert Delano appeals from a judgment of conviction of the United States District Court for the Western District of New York, Arcara, J. The jury convicted Delano on five counts of a multiple count indictment which principally alleged that Delano used his position as Commissioner of the Buffalo Parks Department to secure both the services of his employees and those of a private company under city contract for his own personal benefit. For the reasons set forth below, we affirm in part and reverse in part.

## BACKGROUND

### A. *The Indictment*

On May 6, 1991 a grand jury in the Western District of New York returned a ten count superseding indictment against appellant Robert Delano. The charges stemmed from Delano's conduct while he served as Commissioner of the Parks Department of the City of Buffalo (Parks Department), a position he held from his appointment in 1985 until his resignation in 1990. Essentially, the government maintained that Delano had operated the Parks Department as a racketeer-

ing enterprise, routinely extorting his employees and a private city contractor by forcing them to perform work on private homes and businesses, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq.

Count I of the indictment charged that Delano, along with several other unindicted "co-racketeers," had conducted and participated in the affairs of an enterprise—the Buffalo Parks Department—through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Count II charged the same individuals with having conspired to conduct and participate in the affairs of the Parks Department through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). As the pattern of racketeering, the indictment detailed seventeen acts of racketeering, all of which alleged either extortion under federal law—the Hobbs Act, 18 U.S.C. § 1951, or larceny by extortion under New York state law. Each predicate act charged an instance in which Delano had forced either Parks Department employees or a company under city contract to provide services outside the scope of their regular or contractual duties. The indictment additionally realleged the predicate acts involving the extortion of the private city contractor separately as substantive Hobbs Act offenses in Counts IV and V.

Count III of the indictment charged Delano with the theft of public property, in violation of 18 U.S.C. § 666(a)(1)(A). Specifically, that count listed seventeen episodes in which Delano allegedly misappropriated public property in his care or custody, namely, the labor of the Parks Department employees. The remainder of the indictment was devoted to two charges of mail fraud stemming from Delano's participation in the illegal sale of chlorine and three alleged violations of the Clean Water Act, see 33 U.S.C. §§ 1311(a), 1319(c)(2), for the illegal dumping of that chemical.

### B. *The Government's Proof*

We view the evidence received at trial in the light most favorable to the government. *See United States v. Keats,* 937 F.2d 58, 62 (2d Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991).

#### 1. *The Parks Department Under Delano*

The Buffalo Parks Department, comprised of approximately 150 workers, primarily cares for and maintains that city's extensive park system and numerous public recreational facilities. The department is organized into five districts, each headed by a "parks supervisor" who reports solely to the Commissioner. Parks supervisors are given the responsibility of managing the day-to-day operations of their districts, a job that entails determining what work needs to be done and which of the workers assigned to their district will do it. All decisions, however, ultimately require the approval of the Commissioner.

The government established that Delano forced Parks Department employees, through the use of extortionate tactics, to perform work outside the scope of their regular employment duties. Parks Department employees testified that Delano frequently "requested," either directly or through one of the parks supervisors,[1] that they give up their lunch breaks, weekends, or personal leave days (*i.e.,* sick or vacation days) and use that time to perform a variety of tasks, including landscaping, maintenance and repair work, snow plowing, and trash removal, for various individuals or private businesses. Delano provided the services of his employees as favors to his personal friends or political backers. In exchange these individuals would compensate Delano with cash or other benefits. Not surprisingly, the Parks Department employees received little for their efforts, although occasionally Delano would reward them with "no-show overtime," or overtime pay that the employees did not actually have to earn.

---

1. Two of the parks supervisors under Delano, Edward Graci and Joseph Staszczyk, were named as unindicted co-racketeers. Graci pled guilty to a single count of mail fraud for his participation in the enterprise and received a sentence of five years probation, 5,200 hours of community service, and was ordered to make restitution in the amount of $10,000 to the City of Buffalo. Staszczyk was granted immunity in exchange for his testimony at Delano's trial.

Despite their knowledge that this work was not within the scope of their job descriptions, a parade of Delano's former employees testified that they nonetheless honored Delano's "requests" for fear of being harmed economically. Principally, Delano generated this fear through his ability to control the distribution of overtime hours within the Department. Parks supervisors were required to submit daily lists of those employees who were potential candidates for overtime work to Delano's office for his approval. Delano often removed the names of those employees who previously had refused to perform extracurricular work at his behest—a fact known throughout the Parks Department. Thus, Parks Department employees testified that they feared being deprived of the opportunity to earn overtime pay, an attractive source of extra income.

Additionally, the employees testified that they feared that refusal to follow Delano's instructions would result in reassignment to undesirable jobs within the Department. As Commissioner, Delano had the "final say" on all job assignments. Parks Department employees explained that Delano regularly abused this discretionary authority, transferring those who refused to perform requested work to such mindless tasks as chopping ice and wood by hand or painting trash barrels outdoors in mid-winter regardless of the weather. Parks Department employees testified that this frequent practice also instilled in them a sense of fear and, in their view, left them with little choice but to accede to Delano's demands.

### 2. Clyde Mays Tree Experts, Inc.

The Parks Department also retained private contractors to assist the Department in providing various services. Beginning in 1984, Clyde Mays Tree Experts, Inc. (CMTE) was awarded a city contract to remove and trim trees located on city-owned property. Under the contract the Parks Department's chief forester, Edwin Drabek, would prepare a list of trees which required CMTE's attention and then submit that list to Commissioner Delano's office for his review and final approval. For each tree removed, CMTE would receive a fixed amount of money determined by the tree's size.

Clyde Mays, owner of CMTE, testified that on two occasions Delano requested, through either Drabek or another Parks Department supervisor, Joseph Staszczyk, that CMTE remove trees that were located on private property, and thus not within the scope of the city contract. With respect to the first incident, Mays testified that in late November 1988 Drabek and Staszczyk separately approached him and "asked me if I would go look at a tree that [Delano] wanted taken down" on property owned by Ralph Degenhart, Buffalo's Police Commissioner. In June 1989 Drabek again solicited the services of CMTE, this time to remove two trees abutting the property of Thomas Greco, a friend of Delano's. Mays testified that he complied with both these requests.

In each instance the requested work was performed despite Mays' understanding that CMTE would not be paid for the work. Indeed, Mays testified that he had no intention of even submitting a voucher or invoice to the Parks Department for payment.[2] Mays further testified that he honored Delano's requests to remove the trees for fear that if he failed to do so, Delano would make his contract with the city uneconomical. Specifically, Mays feared that Delano would exercise his authority under the contract and send CMTE to scattered worksites throughout Buffalo, thereby making the contract unprofitable due to high travel expenses. This fear, Mays explained, grew out of a conversation Drabek had initiated with him prior to any of the requests to perform the tree removals. According to Mays, Drabek informed him that Delano was unhappy with CMTE's slow pace in removing trees and, moreover, planned to "make things difficult for [Mays]" if he did not speed up CMTE's performance. Mays testified that he viewed this comment as a veiled threat and, therefore, when he was subsequently asked to look at the trees, he interpreted these requests as commands and acquiesced.

---

2. Testimony was presented that Delano was paid for providing the services of CMTE. Degenhart paid Delano $700 to have his tree removed while Greco paid him nearly $500.

*C.  The Verdict and Post–Trial Proceedings*

Following a three month trial the jury convicted Delano of the racketeering and the racketeering conspiracy charges.  The verdict interrogatories for these counts indicated that the jury found Delano guilty of five of the seventeen alleged predicate acts with which he was charged.  Specifically, Delano was found to have:

1.  Extorted CMTE by forcing the company to remove two trees from the property of Thomas Greco: Racketeering Act A (extortion in violation of the Hobbs Act under color of official right) (also alleged as substantive violation of the Hobbs Act in Count IV);

2.  Extorted CMTE and four Parks Department employees by forcing them to remove a tree from the property of Ralph Degenhart: Racketeering Act B (extortion in violation of Hobbs Act under color of official right and New York's larceny by extortion statute) (also alleged as substantive violation of the Hobbs Act in Count V);

3.  Extorted three Parks Department employees by forcing them to perform landscaping and maintenance work on the property of Josephine Lomeo: Racketeering Act C (extortion in violation of New York's larceny by extortion statute);

4.  Extorted nine Parks Department employees by forcing them to perform various jobs, including snow plowing, trash removal, and repair work, at the Buffalo Tennis and Racquetball Center: Racketeering Act L (extortion in violation of New York's larceny by extortion statute); and

5.  Extorted two Parks Department employees by forcing them to care for the softball fields at St. Timothy's Church: Racketeering Act O (extortion in violation of New York's larceny by extortion statute).

Consistent with its findings as to the above detailed racketeering acts, the jury also returned guilty verdicts on the two substantive Hobbs Act counts (Counts IV and V).  The jury further convicted Delano on the single count of theft of public property in violation of 18 U.S.C. § 666(a)(1)(A).  Finally, the jury acquitted Delano on the mail fraud counts and the alleged violations of the Clean Water Act.

Following the jury verdict Delano moved pursuant to Federal Rule of Criminal Procedure 29 for a judgment of acquittal.  Delano asserted that the evidence presented at trial was insufficient to sustain the guilty verdicts on Counts I through V.  In the alternative, Delano moved pursuant to Federal Rule of Criminal Procedure 33 for a new trial.  Delano argued that a new trial was warranted on two grounds: (1) the district court restricted his Sixth Amendment right to confront his accusers by excluding the admission of certain statements made to him by certain witnesses, and (2) the district court erroneously submitted the text of the jury charge to the jury.  The district court denied both motions in their entirety.  *See United States v. Delano*, 825 F.Supp. 534 (W.D.N.Y.1993).  Delano received a forty-nine month sentence on each count, to run concurrently, to be followed by two years of supervised release.  Delano currently is serving his sentence.  This appeal ensued.

## DISCUSSION

Delano raises six issues on appeal: (1) the government failed to demonstrate a pattern of racketeering activity, thus necessitating reversal of the RICO convictions; (2) the district court improperly amended the section 666 count of the indictment in its instruction to the jury; (3) the evidence was insufficient to support the two Hobbs Act convictions; (4) the district court improperly admitted state-of-mind testimony that was more prejudicial than probative; (5) the district court improperly excluded as hearsay certain testimony offered by the appellant; and (6) the trial court erroneously provided a copy of its instructions to the jury.  We discuss these claims *seriatim*.

*I.  The RICO Counts*

On appeal Delano contends that his conduct did not constitute larceny by extortion, as found by the jury in racketeering acts B, C, L and O.  Specifically, he claims that, as only labor or services were extorted, the government failed to prove a deprivation of

"property" as required under New York law. See N.Y.Penal Law §§ 155.00(1), 155.05(2)(e) (McKinney 1988). Delano argues that this failure to establish the larceny by extortion predicate acts constitutes a failure to demonstrate a "pattern of racketeering" under RICO. See 18 U.S.C. §§ 1961(5), 1962(c). Consequently, Delano maintains that this Court must reverse the RICO and RICO conspiracy convictions.

## A.

■ Initially, we must address the government's contention that Delano forfeited this argument by failing to present it in his Rule 29 motion to the district court. Indeed, in his Rule 29 motion below, Delano stated a ground different from what he now urges on appeal. In that motion Delano did not assert, as he does now, that the statutory definition of property under New York's larceny scheme does not encompass labor or services. Instead, Delano argued to the district court that the proof adduced at trial established no more than larceny by coercion. See N.Y.Penal Law §§ 135.60(8), 135.65 (McKinney 1987) (defining larceny by coercion). Since coercion is not a predicate act under RICO, Delano claimed that the government failed to demonstrate a pattern of racketeering activity, thus requiring a judgment of acquittal on the RICO Counts.[3]

The government correctly notes that such a shift in an appellant's position, as in the case of an inexplicit objection, will not suffice to preserve an objection on appeal. See United States v. James, 998 F.2d 74, 78 (2d Cir.), cert. denied, — U.S. —, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993); United States v. Torres, 901 F.2d 205, 227–28 (2d Cir.), cert. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). We thus review Delano's claim for plain error. See Fed. R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Federal Rule of Crimi-

nal Procedure 52(b) grants appellate courts the discretion to correct an "error" or "[d]eviation from a legal rule" provided that it is "obvious," which at a minimum means an error that is "clear under current law," and that "affect[s] substantial rights." United States v. Olano, — U.S. —, — – —, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993); see also Romano v. Howarth, 998 F.2d 101, 104 (2d Cir.1993). We conclude that the district court's failure to notice that labor or services does not fall within the statutory definition of property for the purposes of New York's larceny scheme was plain error. Because the error seriously affected the fairness of Delano's trial, see Olano, — U.S. at —, 113 S.Ct. at 1779, we exercise our discretion under Rule 52(b) to reverse his convictions on the RICO counts.

## B.

■ Under New York's penal code, extortion is proscribed as a type of larceny:

Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

. . . .

(e) By extortion.

A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will:

. . . .

(viii) Use or abuse his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely.

N.Y.Penal Law § 155.05(2) (McKinney 1988) (emphases added). Thus, larceny by extor-

---

**3.** The district court rejected this argument, stating that "the government produced sufficient evidence to support a jury finding that [Delano] committed larceny by extortion rather than coercion." Delano, 825 F.Supp. at 540. Delano reasserts his larceny by coercion argument in the alternative to the argument he now presses on appeal. In light of our holding we express no view on (1) whether Delano's conduct was larceny by coercion, or (2) whether larceny by coercion generally can serve as a RICO predicate act.

tion requires the particular element of forcing a person to surrender property. The government maintains that the proof at trial, evidencing the extortion of labor from both the Parks Department employees and the city contractor, satisfied its burden to demonstrate this requisite.

The term "property," however, is given a distinct meaning for the purposes of the theft-related offenses contained in Title J of New York's Penal Law, in which the crime of larceny by extortion may be found. Section 155.00(1) specifically defines "property" as "any money, personal property, real property, computer data, computer program, thing in action, evidence of debt or contract, or any article, substance or thing of value, including any gas, steam, water or electricity, which is provided for a charge or compensation." N.Y.Penal Law § 155.00(1). Notably absent from this definition of "property" is the inclusion of labor. Rather, labor falls under the heading of "services." "Services" are defined to include the following: *"labor,* professional service, a computer service, transportation service, the supplying of hotel accommodations, restaurant services, entertainment, the supplying of equipment for use, and the supplying of commodities of a public utility nature such as gas, electricity, steam and water." N.Y.Penal Law § 155.00(8) (emphasis added).

■ Significantly, " 'services are not property' " under New York law. *People v. Tansey,* 156 Misc.2d 233, 242, 593 N.Y.S.2d 426, 432 (N.Y.Sup.Ct.1992) (quoting Commission Staff Notes to Proposed Penal Law § 170.20, at 356, now N.Y.Penal Law § 165.15, *reprinted in* Gilbert, Criminal Law and Procedure (1975–76)). A larceny by extortion charge, which requires the theft of property, therefore cannot be premised on the theft of a service. *See Tansey,* 156 Misc.2d at 241–42, 593 N.Y.S.2d at 432; *see also People v. Topino,* 151 Misc.2d 764, 767, 573 N.Y.S.2d 848, 850 (N.Y.Sup.Ct.1991) (" 'Since a service' (de-

fined in Section 155.00(8)[) ] is generally not considered 'property', . . . a theft of a service would not therefore constitute larceny."); *People v. McLaughlin,* 93 Misc.2d 980, 988, 402 N.Y.S.2d 137, 142 (N.Y.Sup.Ct.1978) (stating that "in many instances the larceny statute may not apply, as where only a *service* . . . is involved"); *see generally* William C. Donnino, Practice Commentary, N.Y.Penal Law § 165.15, at 241 (McKinney 1988) (stating that as a "service" is not considered "property," a theft of a service does not constitute a type of larceny). Accordingly, Delano's theft of the labor of his subordinates, which must be termed a "service" and thus does not constitute property under New York law, cannot subject him to criminal liability under New York's larceny by extortion statute.[4] Consequently, the predicate acts found by the jury to involve larceny by extortion must be reversed and dismissed.

■ This conclusion is buttressed by the presence of section 165.15(10) in the New York Penal Code. Section 165.15(10) specifically provides that "[a] person is guilty of theft of services when: . . . (10) Obtaining or having control over labor in the employ of another person, . . . he uses or diverts to the use of himself or a third person such labor." N.Y.Penal Law § 165.15(10) (McKinney 1988 & Supp.1995). Section 165.15(10) was enacted in direct response to the holding in *People v. Ashworth,* 220 A.D. 498, 222 N.Y.S. 24 (4th Dep't 1927). In *Ashworth* the Appellate Division held that the crime of larceny was not committed by employees of a textile mill who used their employer's machines and workers without permission to spin wool for commercial sale. The court found that the unauthorized use of the mill's labor and equipment did not constitute a theft of property and therefore could not serve as the basis for a larceny prosecution. Subsection 10 was enacted " 'for the purpose of plugging this apparent gap' " in the law, as interpreted in the *Ashworth* decision. *People v. Weg,* 113

4. The government asserts that predicate acts B and C also alleged the taking of money, as well as labor. In both instances money was paid to Delano, through his employees, for their work. The jury, however, was never instructed on this point. Indeed, the district court denied the government's request to include money in that por-

tion of the charge addressing the larceny by extortion predicate acts, finding that the indictment only alleged the taking of labor. As the jury's verdict with respect to racketeering acts B and C related only to the extortion of the labor of Parks Department employees, we confine our discussion to this issue.

Misc.2d 1017, 1021–22, 450 N.Y.S.2d 957, 960 (N.Y.Crim.Ct.1982) (quoting Commission Staff Notes to Proposed Penal Law § 170.20, at 357). In making this change, however, "[t]he draftsmen expressly declined to go to the other extreme of equating services with property and of predicating, whenever possible ..., theft of services offenses to those involving thefts of property, or larcenies." *Id.* at 1022, 450 N.Y.S.2d at 960 (internal quotes omitted) (citing Commission Staff Notes to Proposed Penal Law § 170.20, at 356). Thus, it is apparent that Delano's conduct falls under section 165.15(10), an offense the government concedes is not chargeable as a RICO predicate act, and not a violation of the larceny by extortion statute as charged in the indictment.

■ Whether our vacatur of the racketeering acts charging larceny by extortion requires us to reverse the RICO substantive and conspiracy convictions, as Delano implores, is another issue. As the government notes, in addition to the larceny by extortion offenses, the two Hobbs Act violations were charged as predicate acts and found to be such by the jury in its answers to the interrogatories. Thus, for the purposes of our review, Delano engaged in the conduct of a racketeering enterprise through a pattern of racketeering that included at least two predicate acts. *See United States v. Coonan,* 938 F.2d 1553, 1565 (2d Cir.1991) ("[E]ven if we were persuaded ... to dismiss Racketeering Act 16, six other predicate acts would remain, as evidenced by the jury's special verdicts."), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *Brennan v. United States,* 867 F.2d 111, 115 (2d Cir.) ("It is clear that the RICO conviction is amply supported by the jury's finding numerous other legally sufficient predicate acts.") (quotation omitted), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989). Therefore, we must ask whether, had the evidence relating to the larceny by extortion incidents been excluded or limited, the jury nonetheless would have found that Delano committed the Hobbs Act offenses as part of a pattern of racketeering activity.

We confronted a similar situation in *United States v. Biaggi,* 909 F.2d 662 (2d Cir.

1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). In *Biaggi* a jury found the defendant guilty of substantive RICO and RICO conspiracy charges for his role as chief executive officer of the Wedtech Corporation. There, the jury's interrogatories indicated that the RICO convictions were premised on four predicate acts relating to violations of federal bribery law and on two predicate acts of mail fraud. After striking down the bribery racketeering acts, we addressed whether we should reverse the RICO convictions as well, considering that two valid acts of mail fraud still remained.

While the panel in *Biaggi* recognized that "[i]n some circumstances, the jury's finding of two predicate acts, lawfully constituting a RICO pattern, and of the other elements of a RICO offense, will permit affirmance of a RICO conviction notwithstanding the invalidation of other predicate acts," it nevertheless declined to do so. *Id.* at 693. This holding was grounded in the fact that the bribery allegations thoroughly had dominated that case. *See id.* Furthermore, the *Biaggi* Court stated:

> If a jury, informed of the evidence supporting [the defendant]'s claim that he lacked knowledge ..., found that the Government had not proved such knowledge beyond a reasonable doubt and for that reason acquitted him of the bribery offenses, we think it at least questionable whether such a jury would nonetheless have convicted him of the RICO offenses, notwithstanding his commission of the two mail fraud offenses. The excluded evidence might have sufficed to persuade a jury in general not to convict him of the RICO offenses, or, more technically, might have provided a basis for declining to find that the two mail fraud offenses constituted a RICO pattern, even though they were legally sufficient. Under the circumstances, neither the bribery nor the RICO convictions may stand.

*Id.*

Following this rationale, we likewise refuse to affirm the RICO convictions despite the presence of the two legally sufficient predicate acts. As with the bribery predicates in *Biaggi,* the proof concerning Delano's seven-

teen alleged violations of New York's larceny by extortion statute represented the bulk of this RICO prosecution, eclipsing all else. Under the circumstances, it would be too speculative to assume that, had the acts of larceny by extortion been properly removed from the jury's consideration, the jury would have found the two "constituents of RICO's pattern requirement," a threat of continued criminal activity plus relatedness, solely on the basis of the two Hobbs Act predicates. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Therefore, we refuse to hazard a guess at Delano's expense as to whether the jury would have convicted Delano of the RICO charges even in the face of their finding the commission of two Hobbs Act violations. Accordingly, we reverse the substantive RICO and RICO conspiracy convictions and remand for a new trial on Counts I and II, if the government wishes to pursue this course.

## II.  *Constructive Amendment of Count III*

■ Delano next challenges his conviction for misapplication of public property in violation of 18 U.S.C. § 666. Section 666 criminalizes the wrongful obtainment of property from a state or local government, or an agency thereof, which receives $10,000 in benefits from the federal government in any one year period. *See* 18 U.S.C. § 666(a)(1)(A), (b). Count III charged Delano, an agent of the Parks Department, with seventeen acts of theft of public property, namely, the labor of his Parks Department employees, between the years 1985 to 1990. Essentially tracking the statutory language of section 666, Count III alleged that the Parks Department was an agency of the City of Buffalo, a local government which had received in excess of $10,000 in federal assistance in the relevant years.

At trial the government's proof demonstrated, as alleged, that the City of Buffalo received in excess of $10,000 in federal funds in the relevant five year period. Delano subsequently moved to dismiss the section 666 count, arguing that since the indictment had alleged that he was an "agent of the City of Buffalo Parks Department," the govern-

ment was required to prove that the Parks Department itself, and not the City of Buffalo generally, received in excess of $10,000 in federal assistance in any one year. The court denied this motion and, in its charge to the jury, cured this apparent defect by instructing that, as a matter of law, "the City of Buffalo and the City of Buffalo Parks Department are one and the same." Delano now contends that the district court's charge constructively amended the indictment. We disagree.

■ A constructive amendment occurs when " 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.' " *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir.1988) (quoting *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir. 1986)). We repeatedly have held that constructive amendments of an indictment are *per se* violations of the Fifth Amendment that require reversal even without a showing of prejudice. *See, e.g., United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994); *Mollica,* 849 F.2d at 730; *United States v. Weiss,* 752 F.2d 777, 787 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). In determining whether an "essential element" of the offense has been modified, moreover, we have "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial." *United States v. Patino,* 962 F.2d 263, 266 (2d Cir.) (quoting *United States v. Heimann,* 705 F.2d 662, 666 (2d Cir.1983)), *cert. denied,* —— U.S.——, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992).

We conclude that the jury instruction challenged here did not amount to a constructive amendment of the indictment. The instruction, drawing the distinction between the "City of Buffalo Parks Department" and the "City of Buffalo," did not materially alter the section 666 count. Delano, moreover, clearly had adequate notice of the core criminal con-

duct for which he was charged. The indictment sufficiently detailed the instances of theft, including the dates, the identity of the participants and the locations where the labor of his employees was stolen, as well as the years in which the city received the threshold amount of federal assistance. *See Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). Accordingly, Delano's constructive amendment claim must fail.

■■■■ Instead, what occurred here was at best a variance rather than a constructive amendment of the indictment. *See Weiss,* 752 F.2d at 790. A variance, unlike a constructive amendment, does not require reversal absent a showing of substantial prejudice to the defendant. *See id.* Delano, contrary to his claims, was not prejudiced by this minor variance in the government's proof. Indeed, the government stated its intent to demonstrate that the City of Buffalo, and not the Parks Department, was the recipient of the federal funds in the indictment itself, at the time of the government's opening statement, throughout the remainder of trial, and in the charging conference. *See id.* As we hold that Delano received adequate notice of the variance and thus was not substantially prejudiced in his trial preparations, there was no fatal defect to the government's case regarding Count III.

### III. *The Hobbs Act Counts*

■■■■ We now address Delano's claim that there was insufficient evidence to support his conviction on Counts IV and V, which alleged the extortion of the services of CMTE, in violation of the Hobbs Act, 18 U.S.C. § 1951. The standards in this Circuit for challenging the sufficiency of the evidence are well established. A defendant seeking to overturn his conviction on sufficiency grounds bears a "heavy burden." *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Not only must the evidence be viewed in the light most favorable to the government, and all permissible inferences drawn in its favor, *see United States v. Nersesian,* 824 F.2d 1294, 1302 (2d Cir.), *cert.*

*denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), but should the evidence, thus construed, suffice to convince any rational trier of fact that the crime charged has been proven beyond a reasonable doubt, then the conviction must stand. *See United States v. Resto,* 824 F.2d 210, 212 (2d Cir. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Moreover, it is the jury's task, not ours, to choose among competing inferences and explanations. *United States v. Stanley,* 928 F.2d 575, 577 (2d Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

A conviction for extortion within the meaning of the Hobbs Act requires the government to establish that Delano obtained "property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Counts IV and V were premised on two theories: (1) extortion by wrongful use of fear, specifically, fear of economic harm or loss, and (2) extortion under color of official right. The district court's charge to the jury reflected both these theories. Unlike the RICO counts, however, the jury interrogatories for the Hobbs Act counts did not require the jury to specify the precise basis on which it relied in rendering its verdicts.

■■■■ Here, Delano challenges the sufficiency of the evidence under both theories. *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), instructs that when divergent theories of criminal liability are submitted to the jury and the jury renders a general guilty verdict, on a challenge to the sufficiency of the evidence, if the evidence amply supports one of the theories presented the verdict must be affirmed. *See id.* at 56–59, 112 S.Ct. at 472–74; *see also United States v. Garcia,* 992 F.2d 409, 415–16 (2d Cir.1993). Because juries are well equipped to weigh and analyze the evidence adduced at trial, they can be trusted to distinguish factually supported theories of the crime from those that are inadequate. *See Griffin,* 502 U.S. at 59–60, 112 S.Ct. at 474 ("It is one thing to negate a verdict that, while supported by evidence, may have been

based on an erroneous view of the law; it is another to do so merely on the chance— remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.") (quotation omitted). Accordingly, the jury's verdict on the Hobbs Act counts will be sustained if sufficient evidence supports either of the government's two theories.

█ We first turn to the sufficiency of the evidence to prove the government's theory of extortion under color of official right. In *Evans v. United States,* 504 U.S. 255, 268, 112 S.Ct. 1881, 1889, 119 L.Ed.2d 57 (1992), the Supreme Court held that "the [g]overnment need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts," in order to establish extortion under color of official right under the Hobbs Act. Contrary to Delano's contention, however, proof of an explicit promise to perform the official acts in return for the payment is not required. *See United States v. Coyne,* 4 F.3d 100, 111 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 929, 127 L.Ed.2d 221 (1994); *see also Evans,* 504 U.S. at 274, 112 S.Ct. at 1892 (Kennedy, J., concurring) ("The official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.").

Joseph Staszczyk testified that he made the following request of Mays with respect to the Degenhart tree:

> [Delano] told me to call Clyde Mays, and I did, the following day I went out there with Clyde Mays and Mays looked at the tree.... I told him what Mr. Delano had told me. To tell Mr. Mays that if he would take the trees down for him, he would give him some [easy] trees ... to remove.

Additionally, Staszczyk explained that Parks Department personnel, rather than CMTE, normally would have removed trees if they could be taken down with relative ease in an effort to save the Department money. From this testimony, the jury properly could have found that Delano, a public official, obtained a payment to which he was not entitled, *i.e.,*

the services of CMTE, and, further, that Delano did so knowing that Mays provided the services in exchange for Delano's assigning jobs to CMTE which the company ordinarily would not have received. The jury also reasonably could infer that the promise to provide Mays with easy work applied with equal force to the second request to remove the trees located on the Greco property. Therefore, as the evidence sufficiently supports the jury's finding of extortion under color of official right, one of the alleged theories, we affirm Delano's Hobbs Act convictions.

## IV. *Evidentiary Rulings*

█ Appellant next asserts as error certain evidentiary rulings made by the district court. We review such rulings for an abuse of discretion. *United States v. Rivera,* 971 F.2d 876, 885 (2d Cir.1992).

█ Delano first asserts the trial court impermissibly excluded certain conversations Delano held with several of the government's witnesses. Specifically, the trial court precluded Delano from introducing hearsay evidence concerning his recollection of his statements in conversations he had with witnesses who previously had testified as to the substance of those conversations during the government's case-in-chief. *See* Fed.R.Evid. 801, 802. Delano claims that these rulings collectively violated his Due Process and Confrontation Clause rights.

█ The Confrontation Clause of the Sixth Amendment guarantees the defendant in a criminal prosecution the right to confront the witnesses against him. *See Henry v. Speckard,* 22 F.3d 1209, 1214 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 606, 130 L.Ed.2d 517 (1994). The Supreme Court "has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right of cross-examination.'" *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (quoting *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)); *see also Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct.

1431, 1435, 89 L.Ed.2d 674 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination."); *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974) ("The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*") (quotation omitted). Here, Delano had a full and fair opportunity to cross-examine each of the government witnesses in question. Indeed, Delano's counsel extensively questioned them on their recollections of the conversations with Delano, the potential for their misinterpreting his words or taking isolated parts of the conversations out of context and, further, any possible biases or motivations that would color their testimony. Thus, the jury was able to examine these witnesses and judge for themselves not only their demeanor on the stand but their credibility. *See Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). Accordingly, Delano's right of confrontation was not violated.[5]

Additionally, we have considered Delano's arguments concerning the admission of state-of-mind testimony by Parks Department employees, and find these contentions meritless.

### V. *Submission of the Charge to the Jury*

▮ Finally, Delano maintains that the district court's decision to submit the written text of the jury charge to the jury caused him substantial prejudice, thus warranting a new trial. As Delano failed to object to the district court's decision to provide the jury with such a written copy, thereby giving the district court an opportunity to remedy this perceived error, we review for plain error. Fed.R.Crim.P. 52(b). Given the length of the trial, the number of counts and predicate acts listed in the indictment, the length of the jury charge (filling some 300 pages of trial transcript) and the precautions taken by the district court, the submission of the written text to the jury was not inappropriate under the circumstances of this case. Accordingly, Delano cannot demonstrate any error, let alone surmount the higher plain error standard.

### CONCLUSION

For the reasons detailed above, we reverse as to Counts I (the substantive RICO charge) and II (the RICO conspiracy charge), and these counts are remanded for retrial, should the government choose to pursue such a course. We affirm Delano's conviction under Counts III (violating section 666), IV and V (the Hobbs Act offenses).

---

5. Additionally, Delano's own testimony regarding the conversations was not of such critical importance to his innocence that its exclusion violated his due process rights. *Cf. Green v. Georgia,* 442 U.S. 95, 96–97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979) (per curiam) (holding that the exclusion of evidence of critical importance, despite its being hearsay, was a violation of due process rights).