Gabrielli, J.
Both defendants stand convicted of the crimes of criminal mischief in the second degree (former Penal Law, § 145.05), criminal possession of stolen property in the first degree (Penal Law, § 165.50) and unauthorized use of a motor vehicle (Penal Law, § 165.05). The defendant Griffin was also convicted of an additional count of criminal mischief in the second degree; and the defendant Spatarella was found guilty of the additional crimes of grand larceny in the first degree by extortion (Penal Law, § 155.40) and petit larceny (Penal Law, § 155.25). We agree with the Appellate Division that the guilty verdicts on these counts of the indictment were justified, as *160 found by the jury, to have been established by credible evidence beyond a reasonable doubt.
We write, however, because of the novel argument advanced by the defendant Spatarella regarding his conviction on the charge of grand larceny by extortion. The principal question posed in this regard is whether the successful demand made by Spatarella on the victim Ugenti to give up a business customer to Spatarella, accompanied by a threat of physical injury if the business was not relinquished, amounts to the delivery of “ property ” through fear of physical injury under section 155.05 (subd. 2, par. [e], cl. [i]) of the Penal Law which sets forth the crime of larceny by extortion. Spatarella also complains about the admission of certain tapes into evidence.
The factual background, insofar as it pertains to the principal question presented on this appeal, is as follows: At the time of the occurrence Spatarella was in charge of the All American Refuse Removal Corporation. Angelo Ugenti was then, and had been since 1964, president of North Shore Sanitation. Both refuse companies operated in Suffolk County. Prior to October 1, 1969, Spatarella’s All American Refuse had been servicing the Mei-Ting restaurant in Huntington. On that date Ugenti’s North Shore Sanitation Company began servicing the restaurant. In January, 1970, Ugenti was driving his refuse truck along the Jericho Turnpike when Spatarella pulled alongside and motioned him to the side of the road. Spatarella then told Ugenti to stop servicing Mei-Ting by the first of the following month or he, Ugenti, would end up in the hospital. Ugenti testified that he believed Spatarella and promptly moved his containers from the restaurant. Jack Lee testified that thereupon All American’s containers appeared at his establishment, and there is no indication that this change in service was at Lee’s instigation. He stated that Ugenti informed him that North Shore was stopping service and that All American’s containers appeared.
The Appellate Division’s unanimous affirmance of Spatarella’s conviction on the extortion count precludes our review on the facts unless it can be said that, as a matter of law, defendant’s guilt was not proved beyond a reasonable doubt (People v. Buchalter, 289 N. Y. 181, 223). In the case before us the question of the credibility of the witnesses was for the jury’s consideration, and nothing is shown by defendant which would justify our intervention in the matter of the sufficiency of the evidence.
*161 As to the question of law, defendant argues that this situation, where a customer is stolen through intimidation, is not such as is envisioned under section 155.05 (subd. 2, par. [e], cl. [i]) of the Penal Law which states: “ (e) By extortion. A person obtains property by extortion when he compels or induces another person to deliver such propery to himself or to a third person by means of instilling in.him a fear that, if the property is not so delivered, the actor or another will: (i) Cause physical injury to some person in the future ”. Defendant contends that a customer is not a thing or property capable of delivery; that the statute contemplates the delivery of a tangible item such as money or objects of value. Moreover, says defendant, there was no actual delivery of the customer nor was there a taking; nor, in fact, was Jack Lee or the Mei-Ting business “ owned ” by LTgenti.
The more common type of extortion, of course, is where money is demanded in return for leaving the victim or his business alone. In this case it is not Jack Lee or the Mei-Ting restaurant that comprises the object extorted. Rather, it is the business generated from that source which was demanded under threat by defendant. In People v. Barondess (61 Hun 571) the Appellate Division reversed an extortion conviction where defendant demanded money from an employer under a threat to keep members of a striking labor union, who were the victim’s employees, from returning to work. The majority of the court ruled that the employer’s business was not his “ property ” which could be damaged within the contemplation of the statute which prohibited the extortion of money under threat of property destruction. This court reversed the Appellate Division and reinstated the defendant’s conviction on the opinion of Justice Daniels who dissented at the Appellate Division (133 N. Y. 649). Justice Daniels had determined, in effect, that physical destruction to property was not all that was envisioned under the statute; that if a business were left to wither and die for lack of workmen to carry it on there would be just as destructive an effect as if real or personal property used in the business were destroyed. He stated: ‘1 And business is property, as much so as the articles themselves which are included in its transactions. * * * For it has been said by Blackstone that property consists in the free use, enjoyment and disposal of all the owner’s acquisitions, "without any control or diminution save only by the laws of the land. (1 Blackstone’s Com. [Sharswood ed.], 138.) ” (61 Hun, at p. 585.)
*162 Relying to a large degree on the Barondess case the Appellate Division in People ex rel. Short v. Warden of City Prison (145 App. Div. 861, affd. 206 N. Y. 632) held that where a house painter was threatened with the loss of his job unless he paid over 50 cents a day, the crime of extortion was committed. The lower court had ruled that employment was not property which could be threatened within the meaning of the statute. It was stated in the Appellate Division that the word property as used in the statute ‘ ‘ is intended to embrace every species of valuable right and interest, and whatever tends in any degree, no matter how small, to deprive one of that right, or interest, deprives him of his property.” (145 App. Div., at p. 863). This line of cases is completed by the decision in People v. Wisch (58 Misc 2d 766) where the court, relying on Barondess and Short, held that threats to affect a milk route by cutting off the supply of milk constituted extortion.
These authorities have construed the term “ property ” for one purpose under the extortion statute, i.e., for the purpose of defining the kind of property which can be threatened, and consistently held the term to include intangible rights. We are not disposed to construe the term differently in defining the sort of property which can be demanded under pain of injury to the person or other property within the contemplation of the statute. Surely the extortionist’s demand for the business itself, or a part of it, is, if anything, more egregious than the demand simply for money. The overly literal arguments raised by defendant do not meet the overriding logic of the statute’s application to these facts. In sum, Ugenti possessed an advantageous business relationship which was based on an at-will arrangement and which, because of Spatarella’s forceful and illegal behavior, deprived Ugenti of that business arrangement, the advantage of which was obtained by and accrued to the defendant directly in consequence of his extortive activity.
We find no merit to defendant’s additional arguments concerning the tapes. Even though with respect to one of the tapes allegedly containing incriminating and prejudicial material the District Attorney was remiss in not affording pretrial notice (CPL 710.30), a suppression motion was made at trial. Had there been any allegation of involuntariness defendant would have been entitled to a hearing. However, the court was correct in summarily denying the motion since no ground was alleged constituting a legal basis for the motion within the contemplation of article 710 of the Criminal Procedure Law (CPL *163 710.60, subd. [3], par. [a]). The chief grounds mentioned were surprise and inaudibility of the recordings. Such grounds could have been dealt with by a discovery motion pursuant to CPL 240.20 (subd. 1, par. [b]). The pretrial motion that was made with respect to another of the tapes, sought any and all of defendant’s exculpatory statements. The District Attorney responded that there were no exculpatory statements and the court denied the motion on that ground and reaffirmed that holding, at the trial, having listened to the tape and finding nothing exculpatory — a determination we find no reason to disturb. The negative pregnant lodged in the District Attorney’s response might have activated a further motion for any and all of defendant’s statements whether exculpatory, inculpatory, or neutral; but no such motion was made. At any rate, since the trial suppression motion was not based on a claim of involuntariness the District Attorney’s violation of the notice provisions of article 710 cannot, per se, provide a ground for suppression. The article 710 machinery, insofar as it provides for a suppression hearing, or renders evidence inadmissible because of lack of notice, is thrown into gear only upon an averment that the evidence was illegally seized, or obtained involuntarily, or the result of improper eyewitness identification (CPL 710.20). There was no such averment here, much less a plausible one.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Rabin and Stevens concur.
Order affirmed.