THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH SCHIPANI, SALVATORE SINDOME, JOSEPH DANTUONO, SAM GALASSO and PATSY D'AVANZO, Respondents.

Second Department, February 15, 1977

*Eugene Gold, District Attorney (Michael S. Ross* of counsel), for appellant.

*James M. LaRossa (John W. Mitchell* of counsel), for Joseph Schipani and others, respondents.

TITONE, J. This is an appeal by the People from an order of the Supreme Court, Kings County, rendered April 15, 1975, as resettled by an order entered June 30, 1975, which granted defendants' motion to suppress electronically intercepted evidence on the grounds that no amendment was sought after

the evidence uncovered was found to be at a variance with the crimes specified in the warrant and that the police had failed to minimize the conversations intercepted. We affirm.

Throughout the year preceding the issuance of the eavesdropping warrant in question, police, acting in conjunction with the Kings County District Attorney's office, conducted an intensive probe into the inner workings of the private carting industry in Brooklyn. In their attempt to understand fully how control over a very large and thriving enterprise reputedly vested in a very select group, the undercover agents employed both the routine tactics of monitoring the activities of the trade association, thought to be the apex from which every facet of the industry was firmly regulated, and the truly novel and imaginative practice of setting up a bogus carting company to penetrate the supposedly covert fiefdom from within.

During the ensuing months, the two-pronged investigation uncovered tangible evidence of a pattern of monopolistic control perfected through violence. The sanitation industry was virtually carved up by the association into exclusive profitable routes and sold to operators who were protected from any competition. Merchants affected by the trade were dissuaded from discontinuing the services of overpriced association carters with threats of property damage and physical injury. Any attempt to cut costs in the face of price fixing was firmly countered with the threat to curtail pickups.

The trade association convened regularly to discuss rates and terms charged. On one occasion, a named defendant was reported to have boasted: "You show me how that's more profitable and I'll be the first to go legitimate."

On June 26, 1973, the Kings County District Attorney obtained an eavesdropping warrant which authorized police investigating the possible influence of racketeering on the Brooklyn private carting industry to intercept communications between three named and other unknown individuals in a named suite in a hotel in downtown Brooklyn where the offices of a private waste association were kept. Pursuant to that order, police implanted a "bug" in the premises and attempted to record during the hours designated in the warrant whenever a named target entered the confines of the hotel, regardless of the substance of the conversation. Although at the conclusion of the investigation the police had uncovered evidence of a conspiracy in restraint of trade, a

crime not specified in the warrant, no attempt was made to amend the order retroactively.

In granting defendants' motion to suppress the evidence developed from the wiretapping of the Brooklyn headquarters of this trade association, Criminal Term ruled: "[A]n amendment is essential if the intercepted matter contains evidence of any crime * * * not included in the designated offenses * * * [even though] there might be some element of a larcenist act * * * or * * * extortion [in criminal restraint of trade] * * * [The] failure [of the People] to obtain any indictment * * * for larceny * * * or * * * extortion * * * or felonious assault or kindred offenses speaks eloquently for the [proposition] * * * that * * * insufficient * * * proof [had been developed] to establish a prima facie case".

The People argue, on appeal, that, while the evidence obtained is at a variance with the crimes specified in the warrant, the deviation rests upon a hopeless technicality. Coercion, extortion, larceny and felonious assault, the vile offenses specified in the June 26, 1973 warrant, have been, the People note, the favorite tactics of any self-appointed collegium of unholy barons of industry in perfecting an unlawful restraint of trade and in perpetuating their illicit regime through a reign of terror (see *Apex Hosiery Co. v Leader,* 310 US 469, 491; *People v Spatarella,* 34 NY2d 157; *Local 36 of Int. Fishermen & Allied Workers of Amer. v United States,* 177 F2d 320, cert den 339 US 947; *United States v International Fur Workers Union,* 100 F2d 541, cert den 306 US 653; *People v Wisch,* 58 Misc 2d 766). Since the history of law itself bears witness to the intimate interrelationship between the crimes specified in the warrant and the offense ultimately substantiated by wiretapping, the People advance the proposition that the warrant need not, under the facts of this case, have been amended.

The primary fallacy in the People's cogent position does not arise from any deficiency in the fundamental logic upon which it rests. The technical variance between the terms of the warrant and the material uncovered would probably not render the inquiry here, one of a well-defined scope and character, into a specific species of unlawful enterprise, infirm as a constitutionally defective roving commission into all lawlessness everywhere (cf. *Berger v New York,* 388 US 41). However justifiable the People's reasoning might appear from a theoretical perspective, this case does not ultimately stand

or fall on general principles. Rather, the key to the solution lies in the very language of the Federal statute which implements the constitutional protections first enunciated in *Berger* (see *United States v Kahn,* 415 US 143, 153).

The People's position, born of logic itself, ultimately fails upon the very precise terms of the Federal statute (US Code, tit 18, § 2517, subd [5]), which bars the use of evidence to substantiate offenses "other than those specified in the order of authorization". Formulated to implement the constitutional command of specificity as to person, place and offense as a safeguard from flagrant abuse of this extraordinary means of discerning information so apparent in the loose practices tolerated in the past (see S Rep No. 1097, 90th Cong, 2d Sess; US Code, Cong and Admin News, p 2112 *et seq),* the exacting degree of precision demanded of police investigators must be satisfied by much more than an uncritical *post hoc* observation that the offenses cited in the warrant have been, in a strictly historical perspective, known to be akin to the offense uncovered. The futility of mounting criminal conspiracy in restraint of trade into a category or species of the more egregious offenses which are described in the warrant, for the purpose of preserving the product of this inquiry, abides in the salient fact that Congress carefully circumscribed the use of evidence obtained to the proof of the specific crimes for which the warrant was obtained and the investigation undertaken. Where the investigation has failed in its objectives, as the failure to return an indictment under any offense named in the warrant sought by the People bears sound witness, the prosecution must be deemed to be at an end (see *United States v Marion,* 535 F2d 697; *United States v Brodson,* 528 F2d 214). While this firm rule may not support the continuation of prosecution on ephemeral, philosophical or historical theories where the evidence uncovered is at a variance with the warrant and might be too finely drawn for the People's tastes, Congress wisely placed it within the prosecutor's power to seek a retroactive judicial order of amendment to conform the warrant to the evidence developed. Hence, under the Federal statute, the failure of the Kings County District Attorney to seek the amendment is fatal to the prosecution of this case.

But even the right of the Kings County District Attorney to seek an amendment adding criminal conspiracy in restraint of trade to the offenses specified in the warrant *nunc pro tunc* would rest upon a very tenuous basis. The Federal statute

which authorizes wiretapping by State officials under the authority of a warrant issued out of a State court narrowly circumscribes the offenses for which such an extraordinary warrant can be obtained to certain crimes of violence, to wit: "murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in * * * dangerous drugs" and to "other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year" (US Code, tit 18, § 2516, subd [2]). Noteworthy, criminal conspiracy in restraint of trade, an unclassified misdemeanor (see General Business Law, § 341), falls within neither category (cf. *People v DiFiglia*, 50 AD2d 709).

Although it has been suggested that when uncovered in the punctilious execution of a proper warrant, information as to offenses which could not be themselves the subject of a valid warrant in the first instance might be admissible (see *United States v Pacheco*, 489 F2d 554, cert den 421 US 909; *United States v Lanza*, 341 F Supp 405), the proposition is utterly unacceptable. It is incomprehensible to imagine how a warrant may be amended retroactively to include matter which could never have appeared therein originally, or how a retroactive amendment could operate to expand the scope of the investigation under the warrant beyond its legitimate bounds as fixed by statute. Especially in the light of the Supreme Court's stern command that "except as expressly authorized in Title III, however, all interceptions of wire and oral communications are flatly prohibited" *(Gelbard v United States,* 408 US 41, 46), the obvious will of Congress to preclude State officials from the use of extraordinary means created by modern technology in the investigation of misdemeanors and other petty offenses and to divest State courts of the jurisdiction necessary to sanction the issuance of such grave warrants for trite or passing causes, as a policy determination which resides within its discretion alone, must be accorded that degree of complete deference to which it is naturally entitled.

To the extent that the interpretation of the companion provision (CPL 700.65, subd 4) in effect in New York might sustain this investigation (cf. *People v Di Stefano*, 38 NY2d 640; *People v Gnozzo*, 31 NY2d 134, cert den *sub nom. Zorn v New York*, 410 US 943), it has been pre-empted (US Code, tit 18, § 2515; S Rep No. 1097, *supra*; cf. *United States v Marion*, 535 F2d 697, 702, *supra*; *United States v Armocida*, 515 F2d 49; *People v Sher*, 38 NY2d 600, 604; *Commonwealth v Vi-*

*tello,* 327 NE2d 819 [Mass]). Accordingly, the very demanding requirements and protections would have to be nonetheless mercilessly applied.

Since we have disposed of the case on other grounds, we find it unnecessary to reach the minimization clause.

Accordingly, the order of the Supreme Court, Kings County, dated April 15, 1975, as resettled by the order entered June 30, 1975, should be affirmed.

HOPKINS, Acting P. J., MARTUSCELLO and COHALAN, JJ., concur.

Order of the Supreme Court, Kings County, rendered April 15, 1975, as resettled by an order of the same court, entered June 30, 1975, affirmed.