OPINION OF THE COURT
Franklin R. Weissberg, J.
This case arises out of a well-publicized investigation into the activities of various union officials, painting contractors and alleged organized crime members of the Luchese crime family during the period December 1978 until June 1990. In essence it is alleged that a criminal enterprise existed in New York City and Long Island to control and corrupt the affairs of District Council No. 9 of the International Brotherhood of Painters and Allied Trades (Painters Union).
The indictment which resulted from the investigation accuses eight defendants and contains 153 counts. Seven of the eight defendants were officials of various District Councils of the Painters Union during the period in question. The eighth defendant, Daniel Rech, was employed by a painting contractor. All eight defendants are charged in the first count of the indictment with enterprise corruption, in violation of Penal Law § 460.20. It is this count that requires initial examination.
Each of the defendants has moved to dismiss the enterprise corruption charge contained in count 1, claiming that the Penal Law article upon which the charge is grounded is unconstitutionally vague. In addition, all of the defendants seek dismissal of that count because the evidence presented to the Grand Jury was legally insufficient to support the charge.
Article 460 of the Penal Law, part of the New York Organized Crime Control Act (OCCA), is a progeny of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). (18 USC § 1961 et seq.) Like RICO, the article is designed to "thwart the activities of organized criminal activity”. (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 460, at 552.)
Although OCCA is based upon RICO, it is clear from both the language of OCCA and the legislative history that the *116 New York State Legislature intended to draft a narrower and more precise statute than RICO. The Legislature was aware of and sought to avoid the wide scope and sweep of RICO.
That scope is extremely broad. 18 USC § 1962 (c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity”. There is no requirement that the "enterprise” be criminal in nature. As a result RICO has spawned substantial civil and criminal litigation having nothing to do with organized crime.
The drafters of OCCA were also concerned about what they regarded as vague language in RICO. For example, the term "enterprise” is not defined in RICO. "Pattern of racketeering activity” is defined merely as "requiring] at least two acts of racketeering activity”. (18 USC § 1961 [5].) Because of RICO’s vagueness, there have been suggestions that the law may be vulnerable to constitutional attack. (See, e.g., Rakoff, The Unconstitutionality of RICO, NYLJ, Jan. 11, 1990, at 3, col 1.)
The failure of the RICO statute to precisely define "enterprise” has not prevented courts from concluding that use of that term therein is constitutional. (See, United States v Paccione, 738 F Supp 691, 698-699 [SD NY 1990]; United States v Hawes, 529 F2d 472, 478-479 [5th Cir 1976].) Indeed, the use of that undefined term has been defended as "necessary in view of the fluid nature of criminal associations.” (United States v Swiderski, 593 F2d 1246, 1249 [DC Cir 1978], cert denied 441 US 933 [1979].)
The term "pattern of racketeering activity” has also found judicial approval. Racketeering activity means any offense from an extensive list of Federal and State crimes listed in the statute. (18 USC § 1961.) The limited definition of "pattern” contained in RICO has also survived challenges that it is too vague. See, United States v Angiulo (897 F2d 1169, 1179 [1st Cir 1990]), in which the court declined to invalidate the statute as vague "simply because potential uncertainty exists regarding the precise reach of the statute in marginal fact situations”.
The United States Supreme Court has on occasion had difficulty discerning what Congress intended a RICO "pattern” to involve. In Sedima, S. P. R. L. v Imrex Co. (473 US 479 [1985]), the court expressed dismay that Congress had failed to *117 properly define the term at all but had simply required that a "pattern” include at least two acts of racketeering activity. The court concluded that "pattern” involved something more than two acts, and after examining RICO’s legislative history, settled on "'continuity plus relationship’ ” as the additional requirement. (Supra, at 496, n 14.)
Almost five years later, in H. J. Inc. v Northwestern Bell Tel. Co. (492 US 229, 239 [1989]), the court conceded that "'continuity plus relationship’ ” meant different things to different circuits. Nevertheless, it held firm to the Sedima requirement that, in order to establish a RICO pattern, the Government had to show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.” (H. J. Inc. v Northwestern Bell Tel. Co., supra, at 239.)
Justice Scalia, in a concurring opinion in which three other Justices joined, derided the "relationship” requirement as not "much more helpful [to the lower courts] than telling them to look for a 'pattern’ — which is what the statute already says.” (Supra, at 252.) As for the continuity requirement, Justice Scalia wrote: "Today’s opinion has added nothing to improve our prior guidance, which has created a kaleidoscope of Circuit positions, except to clarify that RICO may in addition be violated when there is a 'threat of continuity.’ It seems to me this increases rather than removes the vagueness. There is no reason to believe that the Courts of Appeals will be any more unified in the future, than they have in the past, regarding the content of this law.” (H. J. Inc. v Northwestern Bell Tel. Co., supra, at 255 [Scalia, J., concurring].) Despite these criticisms, no challenge to RICO’s constitutionality has ever succeeded in Federal court.
Aware of the controversies and ambiguities surrounding RICO, the OCCA drafters sought to limit the statute’s applicability and enact "more rigorous definitions.” (Legislative findings, Penal Law § 460.00.) For example, the OCCA statute, unlike RICO, requires that there be a "criminal enterprise”. That phrase is defined in Penal Law § 460.10 (3): " 'Criminal enterprise’ means a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents.”
*118 The limiting nature of this phrase was described by Assemblyman Melvin H. Miller, one of the authors of OCCA, in a letter dated July 16, 1986 to the Governor’s counsel urging adoption of the legislation:
"The most fundamental difference between the measure approved by the Assembly and all prior versions is the requirement of each defendant’s association with a criminal enterprise. Other proposals would have permitted, as does federal law, prosecution of individuals who engage in a pattern of criminal activity without further proof that the criminal activity was accomplished for the purpose of participating in or advancing the affairs of a criminal enterprise with a separate, distinct and ascertainable structure and a continuity of existence and purpose beyond the scope of the pattern itself.
"The members of the Codes Committees felt that the extraordinary sanctions allowed under the Act should be reserved for those who not only commit crimes but do so as part of an organized criminal enterprise. Present law is adequate to punish ordinary white-collar crime, especially after passage of A. 8876 ('mega-larceny’). For that reason, it was not the sponsors’ intent to redefine or sanction anew conduct already punishable under current law. Similarly, mere corruption of a legitimate enterprise by a pattern of criminal activity is insufficient to justify prosecution under this Act. Since the pattern of criminal activity is separately prosecutable there is no need to further prosecute the same conduct merely because the defendant is associated with a legitimate enterprise. Rather, the bill now requires association with an ascertain-ably distinct criminal enterprise in addition to corruption of a legitimate enterprise by criminal activity. In this way we are assured that the Act will only be applied to those who knowingly and voluntarily seek to advance an organized criminal enterprise by their misconduct.”
The OCCA drafters also crafted a very specific description of what constitutes a "pattern of criminal activity”. Penal Law § 460.10 reads:
"4. 'Pattern of criminal activity’ means conduct engaged in by persons charged in an enterprise corruption count constituting three or more criminal acts that:
"(a) were committed within ten years of the commencement of the criminal action;
"(b) are neither isolated incidents, nor so closely related and *119 connected in point of time or circumstance of commission as to constitute a criminal offense or criminal transaction, as those terms are defined in section 40.10 of the criminal procedure law; and
"(c) are either: (i) related to one another through a common scheme or plan or (ii) were committed, solicited, requested, importuned or intentionally aided by persons acting with the mental culpability required for the commission thereof and associated with or in the criminal enterprise.”
The resultant statutory scheme is significantly clearer and more limited than RICO. The complaint of vagueness lacks merit with respect to OCCA. The definitional requirements for a criminal enterprise emphasize a group structure distinct from the criminal acts committed, and it is difficult to perceive how a member of such a criminal organization can profess ignorance that he was violating OCCA.
As noted, RICO has survived all constitutional attacks based on vagueness and overbroadness. The drafters of OCCA, who had the benefit of the Federal experience, drafted a narrower and more precise statute. None of the defendants has either cited a case or advanced a compelling argument in support of a constitutional challenge to OCCA. Therefore, the motions to dismiss count 1 of the indictment on constitutional grounds is denied.
The defendants also claim that the evidence presented to the Grand Jury to support the 152 counts which follow the enterprise corruption charge was legally insufficient. Of particular note is the challenge to those counts which accuse certain of the defendants of grand larceny in the second degree and allege the theft of a union office. Those accused contend that such an official position is not "property” within the meaning of the larceny statutes.
Section 155.00 (1) of the Penal Law defines "property” for purposes of the larceny statutes as follows: " 'Property’ means any money, personal property, real property, computer data, computer program, thing in action, evidence of debt or contract, or any article, substance or thing of value, including any gas, steam, water or electricity, which is provided for a charge or compensation.”
The People contend that a contract with a union for an official position therein is "property”. Similar contractual rights have been recognized as property. In People v Spatarella (34 NY2d 157, 162 [1974]), the contractual right of a *120 refuse removal company to service a restaurant was deemed "property” for purposes of the larceny statute even though it was no more than an intangible "advantageous business relationship which was based on an at-will arrangement”. In People v Garland (69 NY2d 144 [1987]), the Court of Appeals recognized that the legal right of a tenant to occupy and possess an apartment, whether by lease or under statute, was "property” as the term is defined in Penal Law § 155.00 (1). The court stated that a property interest need not be transferrable to meet the definition of the statute. (People v Garland, supra, at 147.)
It is clear from the case law that the term "property” as defined in Penal Law § 155.00 (1) has been given an expansive interpretation by New York courts. It includes contractual rights that are severely limited or incapable of transfer. The right of a union official to the position he or she holds is clearly "property” for purposes of the larceny statutes. The motions to dismiss those counts of the indictment which allege the larceny of a union official’s position are denied.