OPINION OF THE COURT
Bernard J. Fried, J.
Defendants, who were charged with conspiracy in the fifth degree, scheme to defraud in the first degree, perjury in the first degree, offering a false instrument for filing in the first degree and violation of General Business Law § 352-c (5), moved to dismiss the indictment. On November 16, 2000, I denied the motion as to all counts except counts 24, 25 and 26, which charged the crime of offering a false instrument for filing. Thereafter, defendants Adam Cohen, Stanley Cohen and Jamie Scher (nee Jamie Cohen) moved for reconsideration of this decision, to the extent that I found that the licenses are “property” within the meaning of Penal Law § 190.65, in light of the Supreme Court’s recent decision in Cleveland v United States (531 US 12, 121 S Ct 365 [2000]). Defendants Todd Spehler and Eileen Torrillo have joined in the motion.
*437 In their earlier motion to dismiss, defendants argued that the scheme to defraud count (count two) should be dismissed because the broker-dealer licenses and registrations obtained as the result of the alleged scheme do not constitute “property.” They acknowledged that licenses have been found to be “property” within the meaning of the scheme to defraud statute in People v Abedi (156 Misc 2d 904, 911 [Sup Ct, NY County 1993, Bradley, J.]), a factually similar case, but argued that Abedi should not control because it is contrary to the weight of Federal authority interpreting the term “property” under the Federal mail fraud statute upon which the scheme to defraud statutes were modeled and contrary to the Court óf Appeals decision in People v Sansanese (17 NY2d 302 [1966]). I rejected these arguments on the authority of two New York Supreme Court cases directly on point, People v Abedi (supra) and People v Baron (Sup Ct, NY County 1997, McLaughlin, J., indictment No. 3702/97) whose reasoning I found persuasive.
The defendants now seek reconsideration of the denial of their motion to dismiss count two in light of Cleveland v United States (supra), where the Supreme Court held that licenses in the hands of regulators are not “property” for the purposes of the Federal mail fraud statute. Defendants contend that Cleveland calls both Abedi and Baron (supra), the two cases I relied upon in deciding the earlier motion to dismiss, into question and requires a reevaluation of what constitutes “property” under the New York scheme to defraud statute. The People respond that the denial of the motion to dismiss the scheme to defraud count is well supported by New York law, which recognizes intangible rights as property in other contexts, and that Cleveland should not control, because it interprets the Federal mail fraud statute rather than the New York scheme to defraud statute in which the term “property” was intended to be construed and has been construed broadly. Citing my 1997 decision in People v Reynolds (174 Misc 2d 812), and my November 16, 2000 decision in this case, the People assert that New York courts are not bound by the Federal statute and are free to take a different view of what constitutes “property.” Accordingly, the People request that the motion for reconsideration be denied in all respects.
For the reasons set forth below I have reconsidered my earlier denial of defendants’ motion to dismiss count two and concluded that the broker-dealer licenses which are the subject of the scheme to defraud are not “property” within the meaning of Penal Law § 190.65.
*438 New York courts have consistently applied principles derived from the Federal mail fraud statute in construing the similar statutory language of our scheme to defraud statutes. (See, e.g., People v First Meridian Planning Corp., 86 NY2d 608 [1995] [the Court of Appeals stated that Federal case law interpreting the mail fraud statute is highly relevant in construing the scheme to defraud statute and applied Federal precedent to determine whether an investment scheme was a unitary scheme to defraud]; People v White, 101 AD2d 1037, 1039 [2d Dept 1984] [the Court held that the Federal mail fraud statute is highly relevant in evaluating what constitutes a scheme]; People v Kaminsky, 127 Misc 2d 497 [Sup Ct, NY County 1985, Rothwax, J.] [the court adopted Federal interpretations of the mail fraud statute in determining that the term “scheme” means “a plan and a pattern,” as opposed to isolated ad hoc acts, and to suggest that a scheme to defraud may be predicated upon a conscious disregard to the truth of representations made]; People v Lennon, 107 Misc 2d 329 [Broome County Ct 1980] [the court held that check kiting schemes are cognizable under the scheme to defraud statute based in large part on the frequent prosecution of such offenses under the Federal mail fraud statute]; People v Block & Kleaver, 103 Misc 2d 758 [Monroe County Ct 1980] [the court relied on Federal mail fraud case law in determining that a scheme to defraud consists of a pattern of behavior calculated to deceive persons of ordinary prudence and comprehension; involves some connotation of planning and pattern; may affect different people over extended period; may use different means and representations; and that fraudulent intent may be inferred from all the facts and circumstances, from the modus operandi, from the dealings between the parties and from the losses sustained by the victims]; cft, People v Keyes, NYLJ, Sept. 5, 2000, at 27, col 2 [I refused to require a showing of intent to harm, as required by Federal case law interpreting the mail fraud statute, because actual injury is explicitly required under the New York statute].) While there is no question that Federal interpretations of the mail fraud statute are not binding on New York courts, the cases cited above recognize that Federal case law is highly pertinent to the construction of New York’s scheme to defraud statute. Accordingly, I regard the Cleveland decision (supra) to be highly relevant to the question of whether broker-dealer licenses are “property” for the purposes of the scheme to defraud statute.
In fact, although not explicitly stated, Federal construction of the term “property” informed my earlier conclusion that *439 broker-dealer licenses constituted “property” under the scheme to defraud statute. I recognized that the Federal Circuits were split and refused to adopt the reasoning of the line of Federal cases cited by the defendants, which held that licenses were not property, because two New York courts had already considered the precise issue and arguments raised, considered the differing lines of Federal cases and reached the conclusion that licenses were property under the New York statute. I found the reasoning of those New York cases persuasive and denied the motion to dismiss. However, now that the split in the Federal Circuits has been resolved by the Supreme Court in Cleveland, the Abedi and Baron holdings, neither of which have been reviewed by a higher New York court, are questionable.
I think it is relevant that the Abedi court itself explicitly recognized that Federal case law was relevant to the present issue and looked to Federal decisional authority to inform its consideration of whether licenses were “property” within the meaning of the scheme to defraud statute. That inquiry revealed a split in the Federal Circuits on the question of whether licenses were “property” in light of the Supreme Court’s decisions in McNally v United States (483 US 350 [1987]) and Carpenter v United States (484 US 19 [1987]). With decisions on either side of the issue, the Abedi court cited United States v Bucavalas (970 F2d 937 [1st Cir 1992], cert denied 507 US 959 [1993]), a First Circuit case which held that licenses were property, observed that New York courts have recognized intangible rights to be property in the context of New York larceny statutes, and then characterized the licenses as intangible property rights obtained from regulators and sustained the scheme to defraud charge. The Baron court considered the same issue several years later, considered Abedi to be “wholly on point” and similarly concluded that licenses were property.
The reasoning of both Abedi and Baron (supra) has now been called into question by the Supreme Court in Cleveland (supra), which squarely addressed the question of whether the Federal mail fraud statute reaches false statements made in an application for a State license. After a thorough discussion, Justice Ginsburg, writing for a unanimous court, held that for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim and that although State and municipal licenses may become “property” in the recipient’s hands, they do not rank as “property” in the licensor whose *440 core concern is regulatory and not proprietary. The Supreme Court’s reasoning is compelling and, although I am not bound by that decision and am free to take a different view of what constitutes “property,” I can see no principled reason not to adopt the Supreme Court’s construction against the conclusions of two trial level New York cases which were based in part on a rejected reading of the mail fraud statute.
Moreover, I reject the People’s argument that “property” should be interpreted more broadly to include licenses in light of New York’s expansive interpretation of the term in other contexts. It is certainly true that the term “property” is defined broadly in Penal Law § 155.00 (1) and has been given an expansive interpretation by New York courts. For example, the Court of Appeals has recognized intangible contractual rights to be “property” in the context of larceny by extortion. (See, People v Garland, 69 NY2d 144 [1987] [a tenant’s legal right to occupy and possess an apartment constitutes “property” for the purposes of the larceny by extortion statute]; People v Spatarella, 34 NY2d 157 [1974] [the contractual right of a refuse removal company to service a restaurant was “property” for purposes of the larceny by extortion statutes].) Intangible rights, such as employment and the right to conduct business, have also been recognized by lower courts as “property” in larceny by extortion prosecutions. (See, e.g., People v Capparelli, 158 Misc 2d 996 [1993] [contract to renovate hotel was “property” of which victims were capable of being deprived within meaning of larceny statutes]; People v Capaldo, 151 Misc 2d 114 [1991] [union official’s right to a position that he or she holds is “property” for purposes of larceny statute].) In the scheme to defraud context, “property” has been interpreted to include laborers’ services. (People v Vanguard Meter Serv., 160 Misc 2d 685 [Sup Ct, NY County 1994, Bradley, J.] [installers’ services, obtained as the result of a scheme whereby the defendants falsely promised to pay hourly wages, are “property” within the meaning of the “scheme to defraud” statute].) However, the fact that New York recognizes certain intangible rights as property for the purposes of certain provisions of the larceny and scheme to defraud statute does not require the conclusion that broker-dealer licenses and approvals are “property.”
The New York cases cited above are explicitly addressed to specific intangible rights in specific contexts. They do not purport to assert that intangible interests, whatever they may be, constitute “property” for the purposes of the larceny *441 statutes or the scheme to defraud statutes. For example, the recognition of intangible contract rights above pertain exclusively to larceny by extortion and the recognition of services as “property” is specific to the nonpossessory crime of scheme to defraud. The term is clearly not boundless as I held in People v Tansey (156 Misc 2d 233 [Sup Ct, NY County 1992]), where I dismissed counts of criminal possession of stolen property in the fourth degree, grand larceny in the fourth degree and petit larceny on the ground that telephone calling card numbers are not property that can be possessed within the meaning of the criminal possession statutes and because telephone services do not constitute property capable of being stolen under the larceny statutes.
Moreover, I do not believe that even an expansive reading of the term will render the broker-dealer licenses at issue “property” in the hands of the National Association of Securities Dealers (NASD) or the State of New York. Licenses are fundamentally different from the contractual rights and services recognized as property in the above-cited cases. While the broker-dealer licenses and approvals in this case may have value to the defendants and may or may not constitute “property” in their hands, they do not constitute property in the hands of the NASD, or to paraphrase the Cleveland case (supra), the broker-dealer registrations and approvals are merely an embodiment of NASD and the State of New York’s regulatory interest. They are not a means by which property rights are created or relinquished and do not fall into the category of protected intangible property interests recognized in other contexts by New York courts.
Interestingly, at least two early New York cases, including one Court of Appeals case, have considered whether motor vehicle operating licenses were property. (See, People v Sansanese, 17 NY2d 302, supra [the defendant did not obtain “property” by false pretenses in violation of section 932 of the former Penal Law when he obtained a driver’s license by a false application because there is no property right connected with the driving of an automobile]; People v Learman, 261 App Div 748, 753 [4th Dept 1941] [a driver’s license is not “property” for purposes of official oppression under a section of the former Penal Law which required injury to another in “his person, property, or rights”].) I recognize that these cases interpret the former Penal Law; however, they are still noteworthy because they both dealt specifically with licenses and both concluded that they were not “property.”
*442 Having concluded that the “broker-dealer licenses and registrations from the NASD and the State of New York” are not property within the meaning of the scheme to defraud statute, the remaining question is whether this conclusion requires dismissal of count two, or just the striking from the count reference to such broker-dealer licenses and registrations as property. It seems to me that since the count charges the obtaining of other property, i.e., “money from the customers of Renaissance,” which is supported by the evidence before the Grand Jury, there is no basis to dismiss the entire count.
Here, striking this language will not deprive the defendants of their fundamental right to fair notice to prepare an adequate defense, since the indictment placed them on notice of the allegation that there were also monies obtained from customers. Moreover, striking this language does not change the theory of the count to one for which the defendants were not indicted; rather, striking this language will serve to limit, and not extend, the People’s proof. Thus, the defendants still will be tried for the very same crime alleged in the count. And, finally, even though this language is stricken from the indictment, there could be no later retrial in violation of double jeopardy. Therefore, the basic requirements of the right to prosecution by indictment will not be compromised. (See, People v Iannone, 45 NY2d 589 [1978].)
At oral argument, I stated that I would remove all references to broker-dealer licenses and registrations, specifically, the words “broker-dealer licenses and registrations from the NASD and the State of New York and.” There was then disagreement as to whether the reference to the NASD and the State of New York, as persons defrauded, should be stricken as well. The People contended that the words “the National Association of Securities Dealers (‘NASD’), the State of New York and” which follow the phrase “with intent to defraud more than one person and to obtain property from more than one person, to wit” should remain because although the indictment is written in the conjunctive, the statute is in the disjunctive, and thus, the allegation is not only that NASD and the State were deprived of property, which I have found not to be so under Cleveland (supra), but they were also persons whom the defendants “intend[ed] to defraud.” The defense contends that all reference to “the National Association of Securities Dealers (‘NASD’), the State of New York” should be stricken from count two.
I find the People’s reading of the statute is correct. Penal Law § 190.65 (1) (b) is violated when an individual engages in *443 a scheme constituting a systematic ongoing course of conduct with either (1) the intent to defraud more than one person or (2) the intent to obtain property from more than one person by false or fraudulent pretenses, representations or promises; and obtains property with a value in excess of $1,000 from one or more such persons. (Penal Law § 190.65 [1] [b]; see, People v Reynolds, 174 Misc 2d 812 [Sup Ct, NY County 1997].) That is, it is possible to engage in a scheme to defraud by engaging in a scheme constituting a systematic ongoing course of conduct with the intent to defraud more than one person, namely, the NASD, the State of New York and customers of Renaissance, while obtaining property with a value in excess of $1,000 from only the customers of Renaissance. Accordingly, having earlier found the count sufficient, and now having determined that licenses and registrations are not property, only the reference to broker-dealer licenses will be deleted from the obtaining “property” clause of count two.
In conclusion, the defendant’s motion to reconsider is granted and, upon reconsideration, the defendants’ motion to dismiss count two is granted to the extent of striking the above-described reference to “broker-dealer licenses and registrations” from count two.