OPINION OF THE COURT
Ruth E. Smith, J.
Defendant is charged with petit larceny (Penal Law § 155.25), theft of services (Penal Law § 165.15 [3]), criminal possession of a forged instrument in the third degree (Penal Law § 170.20), obstructing governmental administration in the second degree (Penal Law § 195.05) and resisting arrest (Penal Law § 205.30). He now moves to dismiss the accusatory instrument on the ground of facial insufficiency. For the reasons that follow, defendant’s motion is denied.
Facts
The complaint reads in pertinent part:
“Deponent is informed by Police Officer Rene Soto, Shield No. 22740, of TD30, that, at the above time and place defendant did approach informant and ask informant if informant wanted a swipe.
“The deponent is further informed by informant observed [sic] the defendant deprive the New York City Transit Authority of a quantity of United States currency by wrongfully taking from two individuals a sum of United States currency that would otherwise have been paid to the New York City Transit Authority as lawful fares from said individuals, in exchange for which the defendant swiped a bent metrocard through the subway turn *360 stile for each of these individuals, thereby allowing the said individuals to enter the transit system beyond the turnstiles, and the defendant did not enter the transit system beyond the turnstiles.
“Deponent is further informed by informant that, informant, as a New York City Police Officer, is the custodian of the above-mentioned transit system, and the defendant did not have permission or authority to authorize access to or use of the services of the New York City Transit Authority and that the defendant did not have permission or authority to sell said fares or to collect, accept or retain United States Currency from said individuals entering the New York City transit system, and that by allowing said individuals to enter the transit system in exchange for a sum of United States currency that the defendant received from those individuals, in violation of the regulation set forth in 21 NYCRR 1050.4 (c), the defendant did intentionally obstruct, impair and pervert the administration of the governmental function of the New York City Transit Authority of operating the transit facilities on a self-sustaining basis.
“Deponent is further informed by informant that the informant recovered the metrocards from defendant’s person, and that informant determined these metrocards were unlimited ride metrocards by swiping each of them through a New York City Transit Authority metrocard reader and that informant also observed each of said metrocards to be bent.
“Deponent is further informed by informant that the informant has had professional training in the identification of forged documents, has previously made arrests for the criminal possession of forged documents, has previously seized forged documents, and in the informant’s opinion, the instrument in this case is forged.
“Deponent is further informed by informant that upon attempting to place defendant under arrest, defendant resisted arrest by running away and [flailing] his arms” (complaint, dated Jan. 8, 2005).
Discussion
Defendant argues that the charges of petit larceny (Penal Law § 155.25),. theft of services (Penal Law § 165.15 [3]), crimi *361 nal possession of a forged instrument in the third degree (Penal Law § 170.20), and obstructing governmental administration in the second degree (Penal Law § 195.05) are defective. This court shall address each of the charges and denies defendant’s motion in each instance.
An information is facially sufficient if it contains facts of an evidentiary character tending to support every element of the charges and defendant’s commission thereof (CPL 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]). Where the factual allegations contained in an information “give an accused notice sufficient to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense, they should be given a fair and not overly restrictive or technical reading” (People v Casey, 95 NY2d 354, 360 [2000]; People v Konieczny, 2 NY3d 569 [2004]).
Indeed, “[t]he law does not require that the information contain the most precise words or phrases most clearly expressing the charge, only that the crime and the factual basis therefor be sufficiently alleged” (People v Sylla, 7 Misc 3d 8, 10 [App Term, 2d Dept 2005]). Thus, the court must not rely on “external factors to create jurisdictional defects not evident from the face of the document” (People v Konieczny, 2 NY3d at 576). The complete omission of an element from the face of an accusatory instrument, however, is a jurisdictional defect that requires dismissal (CPL 100.40 [1] [b], [c]; Konieczny at 576; People v Inserra, 4 NY3d 30 [2004]; People v Hall, 4 Misc 3d 60 [App Term, 2d Dept 2004]).
The prima facie case requirement of an accusatory instrument is a lower threshold than the burden of proof beyond a reasonable doubt required at trial (People v Henderson, 92 NY2d 677, 680 [1999]; People v Hyde, 302 AD2d 101 [1st Dept 2003]). If the evidence supporting the charges is circumstantial, it will be sufficient only if the allegations, and the logical inferences which flow from them, supply proof of every element of the crimes charged, and defendant’s commission thereof (see People v Cooks, 230 AD2d 683, 684 [1st Dept 1996] [sufficiency of evidence before the grand jury], lv denied 89 NY2d 863 [1996]). The People, however, are still required to prove these allegations at trial by the much more stringent burden of proof beyond a reasonable doubt (Inserra, supra).
1. Obstructing Governmental Administration in the Second Degree (Penal Law § 195.05)
Defendant urges that the obstruction charge is facially insufficient where it fails to allege that defendant physically *362 interfered with a public servant, or how defendant’s alleged actions constituted a form of interference amounting to obstruction. The People correctly counter that the charge is valid since the facts related to defendant’s diversion of funds from the Metropolitan Transportation Authority (MTA) is sufficient to establish an impairment of a governmental function.
“A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor’s intent that the animal obstruct governmental administration” (Penal Law § 195.05).
The operation of the subway system is a function of the government. Indeed, the transit facilities are actually owned by the City of New York and merely operated by the New York City Transit Authority (hereinafter NYCTA) on the City’s behalf (Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., 85 Misc 2d 695, 700 [Sup Ct, Kings County 1976], affd as modified 56 AD2d 53 [2d Dept 1977]).
The MTA is a public benefit corporation performing a governmental function in exercising its duties (Public Authorities Law § 1264; Leeds v Metropolitan Transp. Auth., 117 Misc 2d 329, 330 [App Term, 1st Dept 1983]). The same holds true for the local counterpart of the MTA, the NYCTA (Public Authorities Law § 1202; New York City Tr. Auth. v Loos, 2 Misc 2d 733 [Sup Ct, NY County 1956], affd 3 AD2d 740 [1st Dept 1957]). The NYCTA works in conjunction with the MTA in the operation and control of the transit system (Public Authorities Law § 1202 [1]; § 1264 [1]).
“The operation of the transit facilities and their maintenance and improvement are financed both by revenues generated by operations and public funds from the city, State and Federal governments” (Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., supra at 700). Since the collection of *363 revenue generated by operations is part of the corporate purpose of the NYCTA (and therefore the MTA) in the operation of the subway system, diverting that revenue is an obstruction of the performance of their governmental function (Public Authorities Law § 1202 [2]).
Inasmuch as the information alleges that defendant took money from people so that he could swipe them into the subway system with a forged MetroCard and that he prevented the NYCTA from collecting the lawful fare, it sufficiently establishes all of the elements of the charge of obstructing governmental administration in the second degree, for pleading purposes (Konieczny, 2 NY3d 569 [2004]; Inserra, 4 NY3d 30 [2004]; Casey, 95 NY2d 354 [2000]; Dumas, 68 NY2d 729 [1986]).
2. Petit Larceny (Penal Law § 155.25)
Defendant maintains that, if anything, the taking here consisted of a “service” and not “property.” He further suggests “there are no facts suggesting that the NYCTA ever had possession of the money that was allegedly given to the defendant by a third party” (Bannister affidavit K 17). Finally, defendant submits that the People have not established that he lacked permission or authority to take the property.
The People, on the other hand, argue that defendant committed the crime of petit larceny when he diverted money that otherwise would have been paid to the MTA. Specifically, the People argue the two dollars defendant received for swiping two passengers through the subway turnstile lawfully belonged to the MTA. In taking the money, defendant illegally took what was not rightfully his and, in so doing, committed the crime of petit larceny. This court agrees, but for reasons other than those stated by the People.
“A person is guilty of petit larceny when he steals property” (Penal Law § 155.25). “A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof’ (Penal Law § 155.05 [1]). Originally, “property” was defined to mean “any money, personal property, real property, thing in action, evidence of debt or contract, or any article, substance or thing of value” (see Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 155, at 168, quoting L 1967, ch 791, § 19). In 1978, however, the Legislature amended the definition to include “any gas, steam, water or electricity, which is provided for a charge or compensa *364 tian” (Penal Law § 155.00 [1]). And in 1986, the definition was further broadened to include “computer data” and “computer program” (Penal Law § 155.00 [1]; Donnino, supra at 169).
In addition to the Legislature, the courts have also expanded the definition of property. In 1911, the Appellate Division, First Department, held that the definition of property was “intended to embrace every species of valuable right and interest, and whatever tends in any degree, no matter how small, to deprive one of that right, or interest, deprives him of his property” (People ex rel. Short v Warden of City Prison, 145 App Div 861, 863 [1st Dept 1911], affd 206 NY 632 [1912]). In so doing, the Court paved the way for the expansion of property to include intangible rights, whether it is the right to one’s labor (id.), the right to “advantageous business relationship [s]” (People v Spatarella, 34 NY2d 157, 162 [1974]), or the statutory or contractual right to occupy and possess an apartment (People v Garland, 69 NY2d 144 [1987]).
Particularly relevant to the issue before this court is the Court of Appeals decision in Spatarella. In that case, the defendant was convicted, among other things, of the crimes of grand larceny in the first degree by extortion (then Penal Law § 155.40) and petit larceny (Penal Law § 155.25). Specifically, he was convicted of using threats of physical injury to coerce the victim Ugenti to relinquish a contract to pick up refuse at a particular restaurant. On appeal, the defendant argued that a customer or service contract is not a thing or property capable of being delivered and that “property,” for purposes of the statutes in question, refers only to tangible items such as money or objects of value (Spatarella, 34 NY2d at 161). The Court of Appeals disagreed. Describing the defendant’s arguments as “overly literal,” the Court held that “business is property, as much so as the articles themselves which are included in its transactions” (id. at 161-162). Likewise, this court finds defendant’s arguments to be overly literal and at odds with the long-established precedence of the Court of Appeals.
The business of the NYCTA is, among other things, to operate the transit facilities of New York City for the convenience and safety of the public (Public Authorities Law § 1202 [1]). To carry out this function, the NYCTA has the exclusive right “[t]o make, amend and repeal rules governing . . . the payment of fares or other lawful charges for the use of such facilities” (Public Authorities Law § 1204 [5-a]). No person except for employees of the NYCTA, acting within the scope of their employment
*365 “shall sell, provide, copy, reproduce or produce, or create any version of any fare media or otherwise authorize access to or use of the facilities, conveyances or services of the authority without the written permission of a representative of the authority duly authorized by the authority to grant such right to others” (21 NYCRR 1050.4 [c]).
The business of selling access to the subway system is the business and exclusive right of the NYCTA. As such, it qualifies as property under the holdings of Spatarella and Garland. And any taking of this property, without the permission of NYCTA, thus constitutes the crime of petit larceny (21 NYCRR 1050.4; Spatarella, 34 NY2d 157 [1974]; Garland, 69 NY2d 144 [1987]; Warden of City Prison, 145 App Div 861 [1911]).
In the present case, it is alleged that defendant offered to sell entry to the subway station to a police officer. After the officer declined, defendant purportedly made the same offer to two other individuals. Using a bent MetroCard, defendant then allegedly swiped the card to enable these individuals to gain entry into the subway system, after charging each one a dollar. Thereafter, defendant remained standing on the outside of the subway entrance, supposedly awaiting his next customer. The officer, a duly authorized custodian of the transit system, stated that defendant did not have permission or authority to accept money or transact business on behalf of the NYCTA.
If true, defendant’s actions constitute the crime of petit larceny. Selling access to the subway system is a diversion of the business, and hence property, of the NYCTA. And doing so without the permission of the NYCTA constitutes petit larceny. Because defendant’s actions are clearly spelled out in the information, defendant has already received legally sufficient notice of the crime charged. The information established the elements of the crime through nonhearsay facts of an evidentiary nature (Konieczny, 2 NY3d 569 [2004]; Inserra, 4 NY3d 30 [2004]; Casey, 95 NY2d 354 [2000]; Dumas, 68 NY2d 729 [1986]) supporting defendant’s commission of the crime (CPL 100.15 [3]; Dumas, 68 NY2d 729 [1986]).
This court finds defendant’s reliance on People v Johnson (NYLJ, Aug. 2, 1993, at 24, col 1) unavailing. Unlike the facts pleaded in the present case, the defendant in Johnson entered the subway system by turning back the turnstile. Johnson stands for the proposition that an intent to unlawfully obtain a service for oneself is not a theft of property but a theft of ser *366 vice (id.). In contrast, the allegation in the present case is that defendant unlawfully obtained money in exchange for providing others entry to the subway. The holding of Johnson is therefore not relevant to the present case and, to that extent, this court declines to apply it here.
Likewise, this court is unpersuaded by People v Harris (NYLJ, Apr. 24, 2000, at 35, col 3). The Court of Appeals has repeatedly eschewed an overly-technical analysis of the accusatory instrument (Konieczny, 2 NY3d 569 [2004]; Casey, 95 NY2d 354, 360 [2000]). Harris is therefore neither controlling nor applicable to the present case.
Accordingly, defendant’s motion to dismiss the charge of petit larceny is denied.
3. Criminal Possession of a Forged Instrument in the Third Degree (Penal Law § 170.20)
Defendant argues that the information does not establish that the MetroCard was forged. Specifically, he contends that the mere allegation that the card was bent is insufficient to establish that the bending of the card somehow caused a false reading. The People counter that the information establishes the sufficiency of the crime charged because the MetroCards were written instruments that were falsely made, completed or altered, and based upon the officer’s personal observations and experience. Defendant’s argument is unpersuasive.
“A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument” (Penal Law § 170.20). “ ‘Forged instrument’ means a written instrument which as been falsely made, completed or altered” (Penal Law § 170.00 [7]).
Initially, taken as a whole, an accusatory instrument must clearly express the crimes alleged and do so by reciting facts pertaining to all of the crime’s elements (Sylla, 7 Misc 3d at 10; Inserra, 4 NY3d 30 [2004]). Thus, defendant is correct in his assertion that a mere bend in a MetroCard does not in and of itself establish a crime. However, juxtaposing that fact with the other facts pleaded in the accusatory instrument does establish the element of “forged instrument” (Penal Law § 170.00 [7]): specifically, that the cards were bent, unlimited and that defendant accepted money from individuals in exchange for swiping them into the transit system without permission and authority oftheNYCTA.
*367 Additionally, the complaint clearly details the officer’s training and experience in forged documents. Moreover, he expressly states that, based upon his observations, he believes the Metro-Cards in this case to be forged.
It is reasonable to infer from all of the facts in the accusatory instrument that the detective knew, based upon his training and experience, that defendant, by using bent unlimited Metro-Cards, had altered the cards so as to thwart the turnstile’s sensor reading of them. These factual allegations reasonably provide sufficient notice of the charge of criminal possession of a forged instrument in the third degree, for pleading purposes (Konieczny, 2 NY3d 569 [2004]; Inserra, 4 NY3d 30 [2004]; Casey, 95 NY2d 354 [2000]; Dumas, 68 NY2d 729 [1986]).
4. Theft of Services (Penal Law § 165.15 [3])
Defendant posits that this charge is insufficient as it fails to allege that he did not make payment, or avoided or attempted to avoid making payment. The People have made no argument against dismissal of this charge in their affirmation in opposition.
“A person is guilty of theft of services when ...[,] [w]ith intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay” (Penal Law § 165.15 [3] [emphasis added]).
The statute requires that a defendant either (a) intentionally obtain service without paying the lawful fare, or (b) after the service was provided he or she avoids or attempts to avoid payment through various means.
Here, defendant is alleged to have used bent unlimited Metro-Cards in an effort to trick the turnstile computer into reading a fare and granting him access and use of the subway system. Defendant then supposedly sold the illegally obtained access to two individuals and offered access to a police officer, although defendant allegedly never entered the subway. That defendant did not use the subway service for himself is of no moment (Penal Law § 165.15). These facts sufficiently establish, for pleading purposes, that defendant intentionally obtained the service of *368 the transit system without paying the lawful fare (Konieczny, 2 NY3d 569 [2004]; Inserra, 4 NY3d 30 [2004]; Casey, 95 NY2d 354 [2000]; Dumas, 68 NY2d 729 [1986]).
Conclusion
Based on the foregoing, defendant’s motion to dismiss the charges as facially insufficient is denied.